Timothy WILSON, Appellant,

v.

CITY OF EAGAN et al., Jay Berthe, Respondents.

No. 49842.

Supreme Court of Minnesota.

Sept. 12, 1980.

Ramstad, Theisen & Kennedy and Roger J. Ramstad, Eagan, for appellant.

Paul H. Hauge and Bradley Smith, Eagan, for City of Eagan, et al.

Hoey & Krambeer and George H. Hoey, Eagan, for Berthe.

Heard before KELLY, TODD, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Eagan, Minnesota, Ordinance No. 5, § 5.05 (March 2, 1976), and Minn.Stat. § 35.71, subd. 3 (1978) require that before an impounded animal can be destroyed, the animal must be held for five business days, with certain exceptions not applicable in this case. In direct contravention of the ordinance and statute, Eagan animal warden Cary Larson and police officer Robert O'Brien, in performance of their duties, intentionally killed Timothy Wilson's pet cat

on the same day it was properly impounded. Wilson sued the City of Eagan, the warden, and the police officer for compensatory damages and the warden and officer for punitive damages. The deputy police chief, Jay Berthe, was joined as an additional defendant on the second day of the three–day trial. The court ruled at the close of the trial that the defendants were all liable for compensatory damages as a matter of law because they had at least negligently violated the statute and because Wilson was free from contributory negligence. The jury awarded compensatory damages of $40 and punitive damages of $5,000 against the three individual defendants: $2,000 against Larson; $500 against O'Brien; and $2,500 against Berthe. The court dismissed Berthe as having been improperly joined. The court then ruled that Minn.Stat. § 466.-04, subd. 1a (1978) prohibits an award of punitive damages against municipal employees acting in performance of their duties. The trial court also held that if this court interprets the statute to allow punitive damages, the awards should be reduced to $500 each against Larson and O'Brien. We affirm in part and reverse in part.

The issues raised by the appeal belie the humble origins of the case:

(1) Does Minn.Stat. § 466.04, subd. 1a (1978) preclude an award of punitive damages against municipal officers and employees?

(2) Does the conduct of Larson, the animal warden, and O'Brien, the police officer, justify an award of punitive damages against either of them?

(3) Did the trial court err in reducing the punitive damages awarded by the jury?

(4) Was Berthe properly dismissed from the suit?

(5) Did the trial court err in directing a verdict as to negligence?

1. Appellant argues that Minn.Stat. § 466.04, subd. 1a (1978) does not preclude an award of punitive damages against municipal officers and employees, thus raising a question of first impression.

Minnesota Statutes § 466.04, subds. 1, 1a (1978), provide: [1]

MAXIMUM LIABILITY. Subdivision 1. Limits; punitive damages. Liability of any municipality on any claim within the scope of sections 466.01 to 466.15 shall not exceed

(a) $100,000 when the claim is one for death by wrongful act or omission and $100,000 to any claimant in any other case;

(b) $300,000 for any number of claims arising out of a single occurrence.

No award for damages on any such claim shall include punitive damages.

Subd. 1a. Officers and employees. The liability of an officer or an employee of any municipality for a tort arising out of an alleged act or omission occurring in the performance of duty shall not exceed the limits set forth in subdivision 1, unless the officer or employee provides professional services and also is employed in his profession for compensation by a person or persons other than the municipality.

Whether subdivision 1a prevents an award of punitive damages against municipal officers and employees, as well as limiting the amounts recoverable as compensatory damages, cannot be determined from the face of the statute. If the preclusion of an award of punitive damages is considered a

---

1. The remainder of the section reads as follows:

Subd. 1b. Total claim. The total liability of the municipality on a claim against it and against its officers or employees arising out of a single occurrence shall not exceed the limits set forth in subdivision 1.

Subd. 2. Inclusions. The limitation imposed by this section on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort.

Subd. 3. Disposition of multiple claims. Where the amount awarded to or settled upon multiple claimants exceeds $300,000, any party may apply to any district court to apportion to each claimant his proper share of the total amount limited by subdivision 1. The share apportioned each claimant shall be in the proportion that the ratio of the award or settlement made to him bears to the aggregate awards and settlements for all claims arising out of the occurrence.

*limit* on the liability of the municipality as "Limits" is used in the heading of subdivision 1, then the provisions in subdivision 1a that "[t]he liability of an officer or employee \* \* \* shall not exceed the limits set forth in subdivision 1" could be interpreted to mean that punitive damages cannot be awarded against municipal officers and employees.

The contrary interpretation is equally plausible. Subdivision 1 has two sentences. The first sentence limits monetary liability for tort claims against municipalities. The second sentence precludes punitive damages entirely. The first sentence states: "Liability \* \* \* shall not exceed" certain dollar amounts. Subdivision 1a reads: "The *liability* of an officer or employee \* \* \* *shall not exceed* the limits set forth in subdivision 1." (Emphasis added.) The same language of limitation is used in both subdivisions. There is no mention of punitive damages in subdivision 1a. Because both interpretations are plausible, the statute is ambiguous. Therefore, we must turn to legislative intent and rules of construction to interpret the statute.

In 1962, the Minnesota Supreme Court prospectively overruled the sovereign immunity of municipalities. *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962). During the 1963 session of the legislature, the legislature enacted Minn.Stat. ch. 466 (1963), establishing dollar limits on municipal liability for compensatory damages and precluding the award of punitive damages against municipalities. Minn.Stat. § 466.04 (1978). The statute did not affect the personal liability of municipal employees and officers who continued to be liable for unlimited compensatory damages and for punitive damages. *Larson v. Independent School District No. 314*, 289 N.W.2d 112, 121–23 (Minn.1979). *See Douglas v. City of Minneapolis*, 304 Minn. 259, 230 N.W.2d 577 (1975).

In *Douglas v. City of Minneapolis*, the plaintiffs claimed that the city illegally paid the punitive damages imposed against Minneapolis police in federal district court for

actions of the police which violated the civil rights of private citizens attending a fund-raising party for a political cause. We noted that despite the fact that punitive damages could not be awarded against a municipality directly under Minn.Stat. § 466.04 (1978), the municipality was empowered by Minn.Stat. § 471.45 (1978) to indemnify municipal employees and officers for punitive damages awarded against them "if it deems it 'fitting and proper to do so,' assuming that the actions of the officer or the employee which lead to the judgment occur in the performance of duty and do not arise as a result of malfeasance in office or wilful or wanton neglect of duty." 304 Minn. 259, 270, 230 N.W.2d 577, 585 (1975).

Defendants argue that the legislature intended to change the *Douglas* holdings by the 1976 amendments to Minn.Stat. § 466.04 (1978), which added subdivisions 1a and 1b and which increased the dollar limits of subdivision 1. Had the legislature intended to preclude the award of punitive damages against municipal officers and employees, it could have done so expressly. Had *Douglas* been the specific target of the amendments, the legislature could have enacted a statute plainly preventing punitive damage awards or plainly preventing the indemnification of employees for punitive damages. The use of the word "limits" is not the best means to achieve both liability ceilings and punitive damages preclusion. The failure of the legislature to address the holdings in *Douglas* in more specific language indicates that the legislature did not intend to change our decision in *Douglas*. Therefore, the amendments appear to have been directed only at dollar limits.

 Policy arguments also favor the allowance of punitive damages. First, sovereign immunity is an exception to the general tort rules that one should be liable for the harm one causes and for punitive damages in the appropriate case. Consequently, sovereign immunity should be treated restrictively so that the underlying purposes and philosophy of our tort law, including the provisions for punitive damages, can be given effect. Thus, the statute should be

read restrictively, not expansively. *See Larson v. Independent School District No. 314*, 289 N.W.2d 112, 121–23 (Minn.1979) (statute prior to 1976 amendments held not to extend immunity to officers and employees); *City of Minneapolis v. Richardson*, 307 Minn. 80, 239 N.W.2d 197 (1976). Second, the potential for abuse of power by municipal officers and employees in ways that could cause harassment, invasion of privacy, or injury to property low in value is great. Although such abuses are presumably rare, when they occur compensatory damages are likely to be small and will not function to deter future similar conduct. Furthermore, citizens and attorneys are not likely to take action to redress the wrongs where the actual compensatory damages would be low. Punitive damages are, therefore, appropriate for such cases. *See Douglas v. City of Minneapolis*, 304 Minn. 259, 230 N.W.2d 577 (1975).

We are aware that municipalities may ultimately pay the punitive damages. *Douglas v. City of Minneapolis*, 304 Minn. 259, 274 n. 8, 230 N.W.2d 577, 588 n. 8 (1975). We are also aware that the legislature made the indemnity provisions mandatory, Minn.Stat. § 466.07, subd. 1a (Supp. 1979), rather than discretionary, Minn.Stat. § 466.07, subd. 1 (1978). However, allowing punitive damages awards against municipal officers and employees does not circumvent the clear intent of the legislature that municipalities not be subject to punitive damages awards because municipalities are prohibited from indemnifying officers and employees in cases of "malfeasance in office or wilful or wanton neglect of duty." Minn. Stat. § 466.07, subds. 1a (Supp.1979), 2 (1978).[2]

We construe Minn.Stat. § 466.04, subd. 1a (1978) to allow punitive damages against municipal officers and employees.

█ 2. We consider next the propriety of the punitive damages awards in this case. Punitive damages are allowed only where the harm complained of is the result of conduct done in malicious, willful, or reckless disregard for the rights of others.[3] *Huebsch v. Larson*, 291 Minn. 361, 364, 191 N.W.2d 433, 435 (1971). Whether punitive or exemplary damages are appropriate under the particular facts of this case is within the discretion of the jury. *Id.* The weight and force to be given evidence relating to punitive damages is exclusively a jury question. *Id.; Johnson v. Wolf*, 142 Minn. 352, 172 N.W. 216 (1919).

A review of the record shows that animal warden Larson received a phone call from the owner of a day care center complaining that a cat was being a nuisance in her yard. By the time Larson arrived, the cat had returned across the street to an apartment patio of the apartment complex in which Wilson and his cat resided. Larson captured the cat and put it in a cage. After a brief conversation with the tenant of the apartment adjacent to the patio where the cat was caught, and after a cursory search for the owner, Larson returned to the city hall with the lawfully impounded cat.

Because the city had no facilities to care for the cat and had no contract or arrangement with any kennel or agency to care for impounded cats, Larson attempted to find a city employee or other local citizen who would volunteer to take care of the cat for the required five days. He was not successful. At around 2:30 p. m., Larson met with Jay Berthe, the deputy chief of police, and they agreed the cat should be killed. After attempts to asphyxiate the cat were unsuccessful, Larson and police officer O'Brien took it to the rifle range and shot it three times with a shotgun.

Minnesota Statutes § 35.71, subd. 3 (1978) expressly states: "All animals seized by public authority *shall be held* for redemption by the owner for a period *not less than*

---

2. The issue of indemnification of Larson by the City of Eagan is not before us. The general issue of indemnification is before us only insofar as it relates to whether punitive damages may be awarded at all.

3. The standard of review and the law to be applied is that developed in the prior decisions of this court and not that of Minn.Stat. § 549.20 (1978), because the events in this case occurred before the effective date of the statute.

*five regular business days* of the impounding agency \* \* \*." (Emphasis added.) The relevant city ordinance also requires impounded animals to be held for five days.[4] In direct contravention of the Minnesota statute and the city ordinance, the defendants intentionally killed the cat on the same day that it was impounded.

■ Larson did not act with malice toward the plaintiff; he did not know who the cat's owner was. Nevertheless, the award of punitive damages was appropriate because Larson's conduct in killing the cat within hours of its impoundment evinces a willful disregard for both the law and the property rights of private citizens.

■ There is no evidence in the record, however, that O'Brien, the police officer who did the actual shooting, knew how long the cat had been impounded. Assuming that he had a duty to inquire before killing the cat, breach of that duty is negligence. It is not the type of malicious, intentional, or willful disregard for plaintiff's rights that would support punitive damages. O'Brien is liable for compensatory damages only.

■ 3. The issue of the appropriate amount of punitive damages in cases involving infringement of the rights of citizens by public officials and employees is troublesome. As noted above, the potential for abuse of authority by public officials and employees in ways that can cause harassment, invasion of privacy, or injury to property low in value is great. Such wrongs against citizens are likely to go unredressed if the costs of trial are greater than the amount the injured party could hope to recover. In determining whether punitive damages are unreasonably excessive, the court should consider, among other factors, the degree of malice, intent, or

willful disregard, the type of interest invaded, the amount needed to truly deter such conduct in the future, and the cost of bringing the suit. *See* Minn.Stat. § 549.20, subd. 3 (1978). We find no error in the trial court's ruling that the jury award of $2,000 against Warden Larson be reduced to $500.

4. Appellant challenges the dismissal of defendant Berthe from the suit. Rule 15 of the Minnesota Rules of Civil Procedure allows a party to amend pleadings after a responsive pleading has been served only by leave of court or by written consent of the adverse party. Minn.R.Civ.P. 15.01. Where the amendment would add a defendant, the proposed defendant must consent or the court must give leave to amend. Berthe did not consent.

■ Leave to amend "shall be freely given when justice so requires." Minn.R. Civ.P. 15.01. Whether leave should be given in a particular case depends upon a number of factors, including, in particular, prejudice to the adverse party. *Fore v. Crop Hail Management*, 270 N.W.2d 13, 14 (Minn.1978). 3 *Moore's Federal Practice* ¶¶ 15.08[4], [5] (2d ed. 1979). Prejudice to the adverse party can be weighed against prejudice to the moving party if leave is denied. 3 *Moore's Federal Practice*, ¶ 15.-08[4] at 15–85 to –86 (2d ed. 1979). Where the plaintiff seeks to add a new defendant, the relationship between the new and old defendants and whether the proposed defendant had notice of the suit are important factors. *Id.*, ¶ 15.08[5] at 15–119 to –120.

■ Berthe would have been prejudiced in several ways had the dismissal not been granted. He had not been present at trial for most of the testimony; he had no opportunity to decide whether he wanted a lawyer other than the lawyer representing the city and other defendants; he had no oppor-

---

4. Eagan, Minnesota, Ordinance No. 5 (March 2, 1976)–"Keeping of Animals"–reads in part as follows:

 SECTION 5.05–IMPOUNDING
 Subdivision 1. –DISPOSING OF ANIMALS. Any authorized person may impound any animal found running at large contrary to the provisions of this ordinance.

In the event such owner is known he shall be notified. *Any such animal that is not claimed within five (5) days of impoundment may be destroyed in as humane a manner as possible* or otherwise disposed of by the City Council or duly authorized representative in such manner as it deems appropriate.
(Emphasis in text added.)

tunity to examine or prepare to examine witnesses already called; and he had no meaningful opportunity to present his own evidence. The prejudice to the plaintiff that resulted from not adding Berthe was minimal because the statute of limitations had not run, and, therefore, a separate suit could have been initiated against Berthe.

Berthe was properly dismissed from the suit after having been improperly joined where he did not have notice that he would be a defendant and where he had no opportunity to prepare his defense. *See O'Neil v. Dux*, 257 Minn. 383, 387, 101 N.W.2d 588, 592 (1960).

5. We find the verdict directed against defendants on negligence to be proper. The killing of a cat by public employees on the day they impounded it, when the statute and ordinance require it to be held for five days, is at least negligence.

The defendants argue that Wilson was contributorily negligent in supervising the cat. The wandering of the cat may have caused its impoundment, but the cat's being allowed to wander is not a cause of its being killed by the animal warden and a police officer in violation of a statute on the same day it was impounded. The trial court did not err in refusing to submit the issue of contributory negligence to the jury.

Affirmed in part; reversed in part.

SIMONETT, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.