Roberta C. BRANDT, et al.,
Respondents,

v.

STATE of Minnesota, Respondent,

Walter A. Egeland, Appellant.

No. C8–88–197.

Court of Appeals of Minnesota.

Aug. 16, 1988.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, Gerald J. Morris, Wayne G. Johnson, Johnson & Morris, Silver Bay, for respondents Brandt.

Lawrence M. Baill, Wasserman & Baill, Minneapolis, for respondent Home Ins. Co.

Hubert H. Humphrey, III, Atty. Gen., Jerome L. Getz, Sp. Asst. Atty. Gen., St. Paul, for State.

Robert H. Magie, III, Donovan, McCarthy, Crassweller & Magie, Duluth, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Mark B. Levinger, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae State Court Administrator.

Heard, considered and decided by NORTON, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

HUSPENI, Judge.

Walter A. Egeland appeals from a February 13, 1987, judgment entered after a jury determination that Egeland was 100% at fault for an accident involving himself, respondent Roberta Brandt, and a state-owned and operated road grader. We affirm.

## FACTS

On December 20, 1983, Roberta Brandt was injured in a car accident while riding as a passenger in a car owned and operated by Walter Egeland. Egeland was also injured in the accident. At the time of the accident, Egeland was the county court judge for Lake and Cook Counties, Minnesota, and Brandt was a deputy court clerk for Lake County. The accident occurred when Egeland's car collided with a state-owned and operated road grader as Egeland and Brandt were returning to Two Harbors after holding court in Silver Bay. At the time of the accident, Egeland had personal automobile insurance with a policy limit of $100,000.

Brandt brought an action in negligence against the State of Minnesota and Egeland. A jury found that the state through its employee was not negligent and that Egeland was 100% negligent with respect to the accident which caused Brandt's injuries. The jury awarded Roberta Brandt $133,930.10 in damages and her husband, Allan, $30,000 for his loss of consortium. The trial court then made the following rulings with respect to Egeland's liability: (1) Roberta Brandt was a county employee at the time of the accident and is thus not barred from bringing a tort action against Egeland, a state employee, under the workers' compensation statute; (2) Roberta Brandt and Egeland were not engaged in a "common enterprise" at the time of the accident and Brandt is thus not limited to recovery under the workers' compensation statute; (3) Roberta Brandt and Allan Brandt are limited in their recovery against Egeland to a total of $100,000 pursuant to Minn.Stat. § 3.736, subd. 4; (4) Egeland is not entitled to indemnity from the State of Minnesota pursuant to Minn.Stat. § 3.736, subd. 9.

Egeland contests the trial court's first, second, and fourth rulings. Roberta and Allan Brandt contest ruling number three.

These four rulings, and not the facts pertaining to the accident itself, comprise the legal basis for this appeal.

## ISSUES

1. Is Roberta Brandt's suit against Egeland barred by Minn.Stat. § 176.061, subd. 5?

2. Were Brandt and Egeland engaged in a "common enterprise" within the meaning of Minn.Stat. § 176.061, subd. 4 at the time of the accident?

3. Are Roberta Brandt and Allan Brandt limited in their recovery against Egeland to a total of $100,000 under Minn. Stat. § 3.736, subd. 4?

4. Is Egeland entitled to indemnification from the State of Minnesota under Minn. Stat. § 3.736, subd. 9?

## ANALYSIS

### I.

■ Egeland claims that Roberta Brandt was an employee of the State of Minnesota at the time of the accident. Because Egeland has already been adjudicated a state employee,[1] if Brandt also was a state employee at the time of the accident, her claim against Egeland would be barred by Minn. Stat. § 176.061, subd. 5 (1982), which states that "[a] co-employee working for the same employer is not liable for a personal injury incurred by another employee * * *."

We believe that *Paske v. County of Dakota,* 379 N.W.2d 537 (Minn.1986) controls the issue of Brandt's employment status in this case. *Paske* involved a claim by five county court reporters seeking severance pay from Dakota County. To rule on the reporters' claim, the supreme court had to determine as a preliminary issue whether the reporters were state or county employees. The court stated that the reporters' employment status was statutorily pre-

scribed by Minn.Stat. § 487.01, subd. 2 (1980) and Minn.Stat. § 487.11, subd. 2 (1980). *Id.* at 538.

Minn.Stat. § 487.01, subd. 2 (1980) states that the "county board of a county * * * shall provide and furnish to the county court the * * * personnel the court finds necessary for its purposes." Minn.Stat. § 487.11, subd. 2 (1980) authorizes the use of electronic equipment to record court proceedings and provides that "the court may in its discretion require the proceedings to be recorded by a competent court reporter" at the request of any party to the proceeding. Based on these two provisions, the *Paske* court found that the reporters were necessary county court personnel, and personnel furnished by the county within the meaning of section 487.01, subd. 2. *Paske,* 379 N.W.2d at 538. The court therefore deduced that the reporters were county, not state, employees. *Id.*

On the day of the accident, Brandt was accompanying Egeland in part to electronically record court proceedings as authorized by Minn.Stat. § 487.11, subd. 2 (1982).[2] Therefore, like the reporters in *Paske,* Brandt was a necessary county employee within the meaning of Minn.Stat. § 487.01, subd. 2 (1982) at the time of the accident.

Egeland's reliance on *Kuehn v. State of Minnesota,* 271 N.W.2d 308 (Minn.1978) to prove that Brandt is a state employee is misplaced. As stated in *Paske,* neither the common law of master and servant nor the law of workers' compensation need be considered when, as is the case here, the employee's status is fixed by statute. *Paske,* 379 N.W.2d at 538. We therefore conclude, as did the trial court, that Brandt is a county employee for purposes of determining her eligibility to bring suit against Egeland under Minn.Stat. § 176.061, subd. 5.

---

1. The issue of Egeland's employment status was decided in *State v. Egeland,* 408 N.W.2d 848 (Minn.1987). There, the supreme court ruled that an action brought by Egeland against the State of Minnesota for alleged negligent operation of the road grader was barred under the Workers' Compensation Act, because Egeland

was a state employee as a matter of law. *Id.* at 851.

2. Minn.Stat. § 487.11, subd. 2 and Minn.Stat. § 487.01, subd. 2 have not changed in any relevant respect since 1980.

## II.

Egeland next claims that workers' compensation should be Brandt's sole remedy for the injuries she sustained. Minn.Stat. § 176.061, subd. 1 (1982), the election of remedies provision of the workers' compensation statute, provides:

> Where an injury or death for which benefits are payable occurs under circumstances which create a legal liability for damages on the part of a party other than the employer and at the time of such injury or death that party was insured or self-insured in accordance with this chapter, the employee, in case of injury, or his dependents, in case of death, may proceed either at law against that party to recover damages or against the employer for benefits, but not against both.

*Id.*

■ However, this election of remedies defense is only available if the requirements of subdivision 4 of section 176.061 are met. Minn.Stat. § 176.061, subd. 4 (1982) provides:

> The provisions of subdivisions 1, 2, and 3 apply only where the employer liable for benefits and the other party legally liable for damages are insured or self-insured and engaged, in the due course of business in, (a) furtherance of a common enterprise, or (b) in the accomplishment of the same or related purposes in operations on the premises where the injury was received at the time of the injury.

*Id.* Taken together, these two subdivisions bar Brandt's claim against Egeland if in fact Brandt and Egeland were engaged in a "common enterprise" at the time of the accident, because Brandt has elected the remedy of receiving workers' compensation benefits.

Courts have long construed very narrowly the "common enterprise" exception to the general rule that an injured employee is free to maintain traditional tort suits against responsible third parties. *See, e.g.,* *Chenette v. Trustees of Iowa College, Grinnell, Iowa,* 431 F.2d 49 (8th Cir.1970); *McCourtie v. United States Steel Corp.,* 253 Minn. 501, 93 N.W.2d 552 (1958); *Glea-*

*son v. Geary,* 214 Minn. 499, 8 N.W.2d 808 (1943). This construction comports with the legislative intent behind the Workers' Compensation Act to "enlarge the rights and remedies of the injured workman." *Gleason,* 214 Minn. at 508, 8 N.W.2d at 812. As such, the Act "must always be construed most liberally in favor of the injured workman." *McCourtie,* 253 Minn. at 511, 93 N.W.2d at 559.

■ The common activities of the employees, and not the employers, is the prime consideration in assessing the common enterprise defense. *McCourtie,* 253 Minn. at 506, 93 N.W.2d at 556. Egeland argues that he and Brandt were engaged in a common enterprise at the time of the accident since they both were fulfilling their respective duties as workers within the Lake County court system when Egeland's car hit the road grader. Indeed, Egeland and Brandt were on their way back to the Lake County court house in Two Harbors after holding court in Silver Bay when the accident occurred. However, riding together on trips to neighboring courthouses to carry out judicial business was not a condition of the parties' employment. While Egeland and Brandt often rode together for convenience purposes, they sometimes did not, and it is clear that they were not required to do so as part of their jobs.

■ Egeland also asserts that he and Brandt were sufficiently engaged in the common activity of administering justice in Lake County to trigger the common enterprise defense in section 176.061, subd. 4. However, the supreme court has stated that the common enterprise requirement is not met where the workers were "involved in basically different activities and faced different hazards." *Schleicher v. Lunda Construction Co.,* 406 N.W.2d 311 (Minn. 1987). A mere overlap in the workers' duties, lacking significant interdependence, is not enough to create a common enterprise. *Id.* at 313–14.

Egeland as county judge, and Brandt as deputy court clerk, performed distinctly different functions and duties within the

Lake County judicial system. Brandt's duties were predominantly clerical. She never did legal research for Egeland, and she did not participate in deciding cases or writing opinions. Egeland's primary responsibility, on the other hand, was to hold legal hearings and to rule on the legal questions presented to him as judge. There was no evidence in the record to suggest that Egeland was responsible for any clerical tasks charged to Brandt.

We find this case factually far removed from the few cases that have found a common enterprise to exist between employees. Egeland and Brandt had a much different and less interdependent working relationship than did the workers in *Higgins v. Northwestern Bell Telephone Co.*, 400 N.W.2d 192 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987) (common enterprise found to exist between employees who "worked in close proximity to each other performing generally the same tasks while working on the same equipment in the same physical areas" *Id.* at 193–94) or *Ritter v. M.A. Mortenson Co.*, 352 N.W.2d 110 (Minn.Ct.App.1984) (common enterprise found to exist between employees who were part of the same work crew on construction job). Indeed, those cases arose out of accidents on or near construction sites where the workers were almost inseparably bonded together in order to accomplish their common work goals. It cannot be said that Egeland and Brandt were similarly situated while carrying out their respective duties within the Lake County judicial system. Egeland and Brandt performed separate and distinct functions within that system. Minn.Stat. § 176.061, subds. 1, 4 are not a bar to Brandt's recovery against Egeland in this case.

### III.

The next issue raised in this appeal concerns the amount of recovery to which Roberta and Allan Brandt are entitled from Egeland for their respective injuries. The jury awarded Roberta Brandt $133,930.10

for her injuries and Allan Brandt $30,000 for his loss of consortium. However, the trial court limited the Brandts' recovery to a total of $100,000 pursuant to Minn.Stat. § 3.736, the State Tort Claims Act. The trial court ruled that the limitations found in that section could not be extended to Allan Brandt's derivative consortium claim, since only one injury occurred.

Minn.Stat. § 3.736, subd. 4 (1982) [3] reads:

The total liability of the state and its employees acting within the scope of their employment on any tort claim shall not exceed:

(a) $100,000 when the claim is one for death by wrongful act or omission and $100,000 to any claimant in any other case.

\*      \*      \*      \*      \*      \*

The limitation imposed by this subdivision on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort.

*Id.*

Minn.Stat. § 3.732, subd. 1 (1982) defines "state" and employees of the state as used in section 3.736, subd. 4 as follows:

Subdivision 1. As used in this section and section 3.736 the terms defined in this section have the meanings given them.

(1) "State" includes each of the departments, boards, agencies, commissions and officers in the executive branch of the state of Minnesota and includes but is not limited to the Minnesota Housing Finance Agency, the Minnesota Higher Education Coordinating Board, the Minnesota Higher Education Facilities Authority, the Armory Building Commission, the State Zoological Board, the University of Minnesota, state universities, community colleges, state hospitals, and state penal institutions. It does not include a city, town, county, school district, or other local governmental body corporate and politic.

---

3. Subsequent amendments effective August 1, 1984 which provide limits of $200,000 under section 3.736, subd. 4(a) are inapplicable here.

(2) "Employee of the state" means all present or former officers, members, directors or employees of the state, members of the national guard, or persons acting on behalf of the state in an official capacity, temporarily or permanently, with or without compensation, but does not include an independent contractor.

*Id.*

■ The Brandts argue that because only the executive branch is contemplated within the term "state" in section 3.732, subd. 1(1), Egeland, as a judicial officer, is not entitled to the $100,000 limitation found in section 3.736, subd. 4. However, Egeland's entitlement to the protective limits of section 3.736, subd. 4 does not turn solely on whether section 3.732, subd. 1(1) includes judicial officers. Section 3.736, subd. 4 applies to "the state *and* its employees." Minn.Stat. § 3.736, subd. 4 (1982) (emphasis added). Therefore, Egeland can still qualify for the limitations of section 3.736, subd. 4 so long as he was a state employee within the meaning of section 3.732, subd. 1(2) at the time of the accident. The supreme court in *Egeland v. State,* 408 N.W.2d 848, 851 (Minn.1987), affirmed the district court finding that Egeland was a state employee as a matter of law. *Id.* at 850. Therefore, he is entitled to the $100,000 limitation found in section 3.736, subd. 4.

This conclusion is also supported by the recent case *Andrade v. Ellefson,* 391 N.W. 2d 836 (Minn.1986), where the supreme court examined whether the county of Anoka was entitled to governmental immunity under Minn.Stat. § 3.736, subd. 3 (excluding the "state and its employees" from losses in connection with certain governmental activities). *Id.* at 840. The supreme court stated that Anoka County was entitled to the immunity of section 3.736, subd. 3, despite the fact that the county was specifically excluded from the definition of "state" in section 3.732, subd. 1(1). *Id.* at 840. The supreme court stated that Anoka County could still qualify for immunity, since it fit within the definition of an "employee of the state" in section 3.732, subd. 1(2). *Id.*

We therefore hold, as the plain language of section 3.736, subd. 4 makes clear, that the limitations found in section 3.736, subd. 4 are available to both the state and state employees.

■ The Brandts further argue, however, that even if Egeland is entitled to the limitations in section 3.736, subd. 4, the trial court erred in treating the claims of Roberta Brandt and Allan Brandt as inseparable for purposes of applying the liability limitation of that section. Minn.Stat. § 3.736, subd. 4 (1982) limits the liability of parties within its protection by providing that no tort claim shall exceed "$100,000 to any claimant." The issue raised by the Brandts is whether Allan Brandt's loss of consortium claim is distinct enough to have its own $100,000 limit, or whether it is sufficiently a part of Roberta Brandt's negligence action to limit the couple's total recovery to $100,000.

■ Loss of consortium includes loss of services and society, as well as expenses incurred by a husband in caring for his wife. *Mattfeld v. Nester,* 226 Minn. 106, 32 N.W.2d 291 (1948). A husband's claim for loss of consortium is derivative in the sense that it arises out of injuries sustained to his wife. *Id.* at 131, 32 N.W.2d at 308. However, the supreme court has pointed out that the husband's and wife's claims are "separate claims" in that they involve separate and distinct injuries. *Huffer v. Kozitza,* 375 N.W.2d 480 (Minn.1985) (spouse's consortium claim survived settlement of other spouse's claim).

In *Faber v. Roelofs,* 298 Minn. 16, 212 N.W.2d 856 (1973), the supreme court ruled that a father's claim for medical expenses for injuries to his son was distinct enough to avoid being grouped with his son's claim for purposes of a municipal liability limitation statute similar to section 3.736, *subd.* 4. The Brandts rely heavily on *Faber* claiming that Allan Brandt's consortium claim should similarly be viewed as distinct from Roberta Brandt's negligence claim for purposes of the state's liability limitation.

However, there is a significant difference between this case and *Faber.* While the

father in *Faber* could have brought his action for damages regardless of whether his son's suit was successful, Allan Brandt's consortium claim would die if judgment was rendered against Roberta Brandt in this case. *See, e.g., Thill v. Modern Erecting Co.*, 284 Minn. 508, 170 N.W.2d 865 (Minn.1969) (recovery by injured spouse is an element in non-injured spouse's prima facie case for loss of consortium).

Further, the language of Minn.Stat. § 3.736, subd. 4 states that "[t]he limitation imposed by this subdivision on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort." *Id.* By its very terms, section 3.736, subd. 4 precludes this court from treating Allan Brandt's loss of consortium claim as separate and distinct from Roberta Brandt's injuries for purposes of applying the limitations in that section. The Brandts' total recovery against Egeland is limited to $100,000 under section 3.736, subd. 4.

## IV.

The final issue raised on appeal is whether Egeland is entitled to indemnification from the State of Minnesota in the amount of the Brandts' judgment against him. Minn.Stat. § 3.736, subd. 9 (1982) states:

> The state of Minnesota shall defend, save harmless, and indemnify any employee of the state against expenses, attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by the employee of the state in connection with any tort claim or demand, or expenses, attorneys' fees, judgments, fines, and amounts paid in settlement actually and reasonably incurred by the employee of the state in connection with any claim or demand arising from the issuance and sale of any securities by the state, whether groundless or otherwise, arising out of an alleged act or omission occurring heretofore or hereafter during his period of employment if the employee provides complete disclosure and cooperation in the defense of the claim or demand and if the employee was acting within the scope of his employment. * * * It is the express intent of this provision to defend, save harmless, and indemnify any employee of the state against the full amount of any final judgment rendered by a court of competent jurisdiction arising from a claim or demand described herein, regardless of whether the limitations on liability specified in subdivision 4 or 4a hereof are, for any reason, found to be inapplicable. * * *

*Id.*

The state's statutory obligation to indemnify Egeland is limited by the language of section 3.736, subd. 9. The state need only indemnify for judgments "actually and reasonably incurred by [a state] employee" under that section. The state, as respondent on this issue, argues that, by its terms, section 3.736, subd. 9 requires that Egeland be faced with personal loss before seeking indemnification. The state contends that Egeland's private insurance coverage shields him from such personal loss, and thereby forecloses Egeland's right to indemnification. We agree.

If the legislature had sought to provide state employees with indemnification rights for losses covered by private insurance it could have easily drafted section 3.736, subd. 9 to permit indemnification for judgments incurred by or on behalf of state employees. Its failure to do so leads us to conclude that section 3.736, subd. 9 was designed to allow indemnification only for losses incurred in excess of the employee's private insurance. Since Egeland's private insurance of $100,000 equals the amount to which he is liable to the Brandts, Egeland himself will not incur any actual loss within the meaning of section 3.736, subd. 9. As such, he is not entitled to any indemnification under that section.

## DECISION

Brandt was a county employee and was not engaged in a "common enterprise" with Egeland at the time of the accident. Brandt is thus not barred from bringing suit against Egeland under Minn.Stat.

§ 176.061, subds. 1, 4, 5. However, Roberta and Allan Brandt's total recovery against Egeland is limited to $100,000 under Minn.Stat. § 3.736, subd. 4. Finally, Egeland is not entitled to indemnification from the State of Minnesota under Minn. Stat. § 3.736, subd. 9.

AFFIRMED.