**Bonnie J. ROWE, individually and as guardian of the person and estate of James W. Rowe, Appellant,**

v.

**ST. PAUL RAMSEY MEDICAL CENTER, Respondent,**

**Ramsey Health Care, Inc., et al., Defendants.**

**No. C1-90-610.**

Court of Appeals of Minnesota.

Sept. 11, 1990.

Review Granted Nov. 9, 1990.

W. Scott Herzog, Peter A. Koller, Moss & Barnett, Minneapolis, for appellant.

Alan R. Vanasek, Thomas M. Countryman, Jardine, Logan & O'Brien, St. Paul, for respondent.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and SHORT, JJ.

## OPINION

SCHUMACHER, Judge.

After resolving all other issues, the parties brought cross-motions for summary judgment, seeking an interpretation of Minn.Stat. § 466.04 limiting the liability of municipalities. The trial court ruled for respondent Saint Paul Ramsey Medical Center (SPRMC) holding that the statute precludes both the claims of spouses of injured parties for loss of consortium and the claims of subrogating insurance companies for medical expenses. We reverse the former and affirm the latter, holding that appellant Bonnie Rowe is a separate claimant whose loss of consortium claim is entitled to a separate liability cap, but that the subrogation claim of health care provider HMO Midwest/Blue Cross/Blue Shield (HMOM) is part of the injured party's cause of action and therefore subject to the same liability cap. We affirm in part and reverse in part.

## FACTS

Appellants James and Bonnie Rowe, now aged 42 and 33, were involved in an automobile accident on January 26, 1987. James Rowe was severely injured and was taken to respondent SPRMC. Following emergency surgery on February 27, 1987, it was discovered that his blood sugar level had fallen to zero. Irreparable brain damage resulted, and he was reduced to a permanent vegetative state. There has been little improvement in his condition, and none is expected. In August, 1987, Bonnie Rowe gave birth to their child.

SPRMC is defined by Minn.Stat. § 246A.18 (1988) as a municipality for purposes of tort liability. It was stipulated that James Rowe's uncompensated injuries exceed $200,000, that Bonnie Rowe has an uncompensated loss of consortium claim for $175,000, and that HMOM has an uncompensated subrogation interest exceeding $200,000.

## ISSUES

1. Is the spouse of an injured party a separate claimant entitled to a separate liability cap for a loss of consortium claim under Minn.Stat. § 466.04 (1988)?

2. Is an insurer's subrogation claim separate from the claim of the insured under Minn.Stat. § 466.04?

## ANALYSIS

The facts are undisputed. The sole question in reviewing the grant of summary judgment is "whether the trial court erred in its application of the law." *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

Minn.Stat. § 466.04 (1988) reads:
Subdivision 1. * * * Liability of any municipality on any claim within the scope of sections 466.01 to 466.15 shall not exceed
(a) $200,000 when the claim is one for death by wrongful act or omission and $200,000 to any claimant in any other case;
(b) $600,000 for any number of claims arising out of a single occurrence;

  *   *   *   *   *   *

Subd. 2. Inclusions. The limitation imposed by this section on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort.

In *Faber v. Roelofs*, 298 Minn. 16, 212 N.W.2d 856 (1973), where a father sought to recover medical expenses for his son's injury, the Minnesota Supreme Court held

that this statute envisions multiple claimants for a single occurrence.

> Minn.Stat. § 466.04 limits a municipality's liability to "any claimant" to $50,000. Since the parent's action is essentially separate from the child's action, we feel that an injured minor and his father are both claimants under § 466.04 and that each may recover up to $50,000.

*Faber*, at 25, 212 N.W.2d at 862. Since *Faber*, the legislature has amended this statute twice, increasing the $50,000 liability cap to $100,000, and then to $200,000; on neither occasion did it alter the "any claimant" language. Minn.Stat. § 645.17(2) (1988) provides:

> When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language.

By retaining the "any claimant" language when it revised the statute after *Faber*, the legislature demonstrated that it did not intend to limit liability for an occurrence to $200,000, or to consider all claimants from a given occurrence as subject to one single $200,000 limit. Neither claim here is precluded on these grounds; however, we must determine whether either a spouse seeking loss of consortium or a subrogated insurer is among the claimants envisioned by the statute.

■ 1. A wife's status as a claimant for loss of consortium began in Minnesota with *Thill v. Modern Erecting Co.*, 284 Minn. 508, 170 N.W.2d 865 (1969). In *Thill*, the supreme court stated:

> The rule that we establish today is that the wife of a husband injured as the direct result of the negligence of another shall have a right of action against that same person for her loss of consortium, subject to these essential conditions: (a) Because we hold her right of action to be a derivative right, she may recover only if her husband recovers from the same defendant.

*Id.* at 513, 170 N.W.2d at 869. The derivative nature of a loss of consortium claim was recognized in *Thill* and reiterated in

*Huffer v. Kozitza*, 375 N.W.2d 480, 482 (Minn.1985). Neither case found the derivative nature of the claim to preclude the individual status of the claimant. Appellant is such an individual claimant and is entitled to her own liability cap.

Even assuming arguendo that she was not, loss of consortium is not among the statutory inclusions for liability caps. "The limitation * * * includes damages claimed for loss of services or loss of support * * *." Minn.Stat. § 466.04, subd. 2. (1988).

*Thill* held that consortium

> represents reciprocal rights inherent in the marital relationship of husband and wife, including such undefined elements as comfort, companionship, and commitment to the needs of each other.

*Thill*, 284 Minn. at 510, 170 N.W.2d at 867–68 (footnote omitted). The "undefined elements" aspect of consortium was affirmed by the legislature in the Tort Reform Act of 1986: Minn.Stat. § 549.23, subd. 1, includes "loss of consortium" in the definition of "intangible loss." The court has defined "consortium" as involving "the mutual and reciprocal privileges and duties of the marriage relationship." *Huffer*, 375 N.W.2d at 482. In Huffer, the court held that a loss of consortium claim could survive the settlement of the personal injury claim from which it was derived because "they are separate claims with separate injuries." *Id.*

However, instead of following Huffer, the trial court followed *Brandt v. State*, 428 N.W.2d 412 (Minn.App.1988). In *Brandt*, the court of appeals held that a loss of consortium claim is subsumed in a personal injury claim because the "consortium claim would die if judgment was rendered against [the injured party.]" *Id.* at 417–18. Since the settlement agreement in this case stipulates respondent's liability for the injury, *Huffer* is not only controlling by virtue of being a supreme court decision, but it is also more applicable than *Brandt*.

*Brandt* interpreted the "loss of services" language in Minn.Stat. § 466.04, subd. 2, expansively to include loss of consortium.

*Id.* at 418. However, since the underlying issue here is the scope of sovereign immunity, a restrictive interpretation should be applied.

> [S]overeign immunity is an exception to the general tort rules that one should be liable for the harm one causes * * * Consequently, sovereign immunity should be treated restrictively so that the underlying purposes and philosophy of our tort law * * * can be given effect. Thus, the statute should be read restrictively, not expansively.

*Wilson v. City of Eagan,* 297 N.W.2d 146, 149–150 (Minn.1980). Even applying a restrictive interpretation of the "loss of services" inclusion would not prevent separate claims for loss of consortium, which, as described in *Thill* and *Huffer,* comprises undefined or intangible elements as well as services.

■ 2. The trial court based its denial of a separate liability cap for HMOM on the grounds that Minnesota has no statute establishing separate liability caps for health care providers. This is an issue of first impression, since no Minnesota appellate court has yet determined whether an insurer's subrogation claim is entitled to a separate liability cap.

Minnesota appellate courts have found separate liability caps for medical expenses. *See Faber v. Roelofs,* 298 Minn. 16, 212 N.W.2d 856, 862 (1973) ("the parent's action [for medical expenses] is essentially separate from the child's action"); *Bekis v. Schilling,* 357 N.W.2d 362, 365 (Minn.App.1984) ("the employer's claim for medical expenses is separate and distinct from the employee's tort claim"). However, both of these cases are distinguishable from subrogation: case law has long given the responsible parent of an injured child a separate claim for the child's medical expenses, *Faber,* 212 N.W.2d at 862, and Minn.Stat. § 176.061, subd. 5 entitles employers to maintain separate actions. Otherwise, a subrogee may not maintain an action separate from that of the subrogor: the subrogor, having one action, cannot maintain another, and "if the subrogor lacks standing to maintain an action, so also does the subrogee." *Regie de L'Assurance Automobile DuQuebec v. Jensen,* 399 N.W.2d 85, 88 (Minn.1987).

## DECISION

The trial court's grant of summary judgment is affirmed as to the subrogation claim of HMOM, but reversed as to the loss of consortium claim of appellant Bonnie Rowe.

Affirmed in part, reversed in part and remanded.

HUSPENI, Judge (concurring in part, dissenting in part).

I agree with the majority's determination that HMOM is not entitled to a separate liability cap under Minn.Stat. § 466.04 (1988). I respectfully dissent, however, from the majority's determination that under this same statute appellant Bonnie Rowe is entitled to a separate liability cap for her consortium claim.

The critical question, I submit, is not whether appellant is an individual claimant under Minn.Stat. § 466.04, but whether the language of subd. 2 of that statute applies to her. The issue is not whether the concept of consortium contains undefined elements beyond loss of services and support. The issue is whether the legislature, by including within the cap limitations "damages claimed for loss of services or loss of support arising out of the same tort," intended to exclude from the statute those less tangible undefined elements which may also be a part of a consortium claim, but to snare within its allegedly harsh language of deprivation those items more easily identified and evaluated. I submit that they did not, and that this court in *Brandt v. State,* 428 N.W.2d 412 (Minn.App.1988), correctly interpreted almost identical language in Minn.Stat. § 3.736, subd. 9 to preclude a separate liability cap for a consortium claim. *Id.* at 418.

Further, I believe the public policy considerations underlying the decision to place monetary caps on tort recoveries also support a determination that when the legislature stated that "damages claimed for loss of services or loss of support arising out of

the same tort" would be included within a cap limitation, they intended that every element of consortium be included within that cap also. In *Lienhard v. State*, 431 N.W.2d 861 (Minn.1988), the Minnesota Supreme Court found the state's liability limit on a tort claim to be constitutional and stated:

> The effect of (the statute) is, of course, the protection of the fiscal integrity and financial stability of the State—an effect which is no doubt reflective of the statute. We today reaffirm our earlier recognition that the protection of a governmental entity's financial stability is a legitimate public purpose.
>
> Moreover, it cannot be said that the lawmakers could not reasonably believe that the limitation on the State's liability on any tort claim would further that purpose.

*Id.* at 867 (citations omitted).

To the extent that, as the majority states, it is appropriate to read expansively a statute which restricts the liability of the sovereign, I believe it is also appropriate to read expansively a statute which, as here, sets forth those items which shall be deemed included in a single liability cap. Such expansive reading does not, of course, make a nullity of a claimant's consortium claim in every case. It merely subjects that claim to the liability cap that applies to the tort claim from which the consortium claim is derived.

I would affirm the trial court as to both the unavailability of a separate liability cap for HMOM and the unavailability of a separate liability cap for the consortium claim in this matter.