**Bonnie J. ROWE, Individually and as Guardian of the Person and Estate of James W. Rowe, Petitioner, Respondent,**

v.

**ST. PAUL RAMSEY MEDICAL CENTER, Petitioner, Ramsey Health Care, Inc., et al., Petitioner, Appellants.**

No. C1–90–610.

Supreme Court of Minnesota.

Aug. 2, 1991.

Alan R. Vanasek, Thomas M. Country-man, Jardine, Logan & O'Brien, St. Paul, for appellants.

W. Scott Herzog, Peter A. Koller, Moss & Barnett, Minneapolis, for respondent.

James Alexander, Sp. Asst. Atty. Gen., St. Paul, amicus curiae.

WAHL, Justice.

The parties to this medical malpractice appeal seek a determination as to whether the claim of a spouse for loss of consortium and the claim of a health insurer for medical expenses are included within a single $200,000 limitation of liability for a claim of personal injury pursuant to the municipal liability provisions of Minn.Stat. § 466.04 (1990). Because we hold that both claims are included within a single limitation of liability cap, we reverse in part and affirm in part.

James Rowe and his wife, Bonnie Rowe, were involved in an automobile accident near Amery, Wisconsin on January 26, 1987. James Rowe was seriously injured and was air lifted from a local hospital to St. Paul Ramsey Medical Center (SPRMC). At SPRMC on February 27, 1987, James Rowe underwent emergency surgery to remove his gall bladder. After surgery, it was discovered that his blood sugar level had dropped to zero, a condition that caused severe, irreparable brain damage. James Rowe was reduced to a persistent vegetative state and resides in a nursing home where he is expected to remain for the rest of his life.

Bonnie Rowe, individually, and as guardian of the person and estate of her husband, James Rowe, commenced this action against St. Paul Ramsey Medical Center seeking compensatory damages for James Rowe's personal injuries, for her own loss of consortium, and for past and future medical expenses. HMO Midwest/Blue Cross/Blue Shield (HMOM), the Rowes' health care provider, asserted a subrogation claim for medical expenses it has paid on behalf of James Rowe. The parties have stipulated that SPRMC is liable for James Rowe's injuries. Only damages remain at issue.

SPRMC is treated as a municipality under Minn.Stat. § 246A.18 (1990) and is therefore entitled to assert the limitations of liability contained in section 466.04. SPRMC asserts that all three claims— James Rowe's personal injury claim, Bonnie Rowe's loss of consortium claim and HMOM's subrogation claim—are encompassed within one limitation of liability under Minn.Stat. § 466.04, subd. 1(a)(1) and subd. 2. Rowe asserts that, to the extent Bonnie Rowe and HMOM qualify as "separate claimants" under Section 466.04, their claims are subject to separate $200,000 liability caps.

Rowe, HMOM and SPRMC entered into a stipulation in late 1989 to remove all issues from the suit except the question concerning the statutory limitation of SPRMC's liability under section 466. The parties stipulated, inter alia, that James Rowe's personal injuries exceed $200,000, that Rowe's consortium claim has a value of $175,000, and that HMOM's subrogated claim amounts to $316,000. SPRMC agreed to pay, and has paid, $200,000 to Rowe as guardian for James Rowe.

The parties stipulated that the uncompensated claims of Bonnie Rowe and HMOM "shall be viewed as fully paid, satisfied and released" if the courts of this state answer in the affirmative the following question of law, which they submitted to the trial court on cross-motions for summary judgment:

Are the "claims" of a spouse for loss of consortium and the "claims" of a subro-

gated group health insurance [sic] [both] encompassed within a single $200,000 limitation of liability for a "claim" for personal injury pursuant to Minn.Stat. § 466.04 and § 246A.18?

The trial court determined that neither consortium nor the subrogated claim was subject to a separate limitation of liability, but rather that both claims were subject to the single $200,000 cap that applied to the injured party's claims. Summary judgment was granted to SPRMC on both counts. Rowe appealed.

The court of appeals affirmed the trial court decision that HMOM was not entitled to a separate limitation of liability for its subrogated claim. By a 2–1 decision, however, the panel reversed the trial court and held that Rowe was entitled to a separate limitation of liability for her loss of consortium claim. *Rowe v. St. Paul Ramsey Medical Center*, 460 N.W.2d 98 (Minn.App. 1990). We granted the petitions of both parties for further review.

I.

We are asked to determine whether a spouse's claim for loss of consortium is entitled to the application of a separate damage cap under the Municipal Liability Statute, Minn.Stat. § 466.04. That section provides, in relevant part, as follows:

**466.04 MAXIMUM LIABILITY**

Subdivision 1. **Limits; punitive damages.** (a) Liability of any municipality on any claim within the scope of sections 466.01 to 466.15 shall not exceed:

(1) $200,000 when the claim is one for death by wrongful act or omission and $200,000 to any claimant in any other case;

(2) $600,000 for any number of claims arising out of a single occurrence; * * *

\* \* \* \* \* \* \* \* \*

Subd. 2. **Inclusions.** The limitation imposed by this section on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort.

We first consider whether Bonnie Rowe is "any claimant" under Subdivision 1 with

a separate claim independent of her injured husband's claim. The court of appeals cited this court's decision in *Huffer v. Kozitza*, 375 N.W.2d 480 (Minn.1985) as controlling authority on this issue. In *Huffer*, we held that a wife's claim for loss of consortium, while derivative from her husband's personal injury claim, is a separate claim with separate injuries. Pursuant to *Huffer*, the loss of consortium claimant qualifies as "any claimant" under subdivision 1 and is therefore entitled to a separate application of the damages cap under that subdivision unless such application is precluded by the language of subdivision 2.

The critical question then is not whether Bonnie Rowe is "any claimant" under the statute but whether a separate damages cap for her loss of consortium claim is precluded by section 466.04, subdivision 2. The trial court, relying on the court of appeals' decision in *Brandt v. State*, 428 N.W.2d 412 (Minn.App.1988) which construed virtually identical language in the State Tort Claims Act (Minn.Stat. § 3.736, subd. 4), determined that the court was precluded by that language from treating a consortium claim as separate and distinct for purposes of applying a separate damages cap under that section. We reach the same conclusion.

Subdivision 2 provides that the limitation on municipal liability imposed by section 466.04 on individual claimants "includes damages claimed for loss of services or loss of support arising out of the same tort." Rowe argues that this language is intended to prevent manipulation of claims for tangible economic losses and avoid double recovery. Subdivision 2, according to Rowe, precludes separate recovery only for the tangible elements of loss of consortium such as household chores and duties, but does not preclude separate damages for the intangible elements, particularly comfort, companionship, and sexual relationship, which are also encompassed by the loss of consortium claim. *See, e.g., Thill v. Modern Erecting Co.*, 284 Minn. 508, 510–11, 170 N.W.2d 865, 867–68 (1969). In short, she argues that "loss of services" is not synonymous with the broad claim of "loss

of consortium." Rowe further contends that the language of subdivision 2 is at best ambiguous and that section 466.04 should accordingly be interpreted to restrict application of sovereign immunity. *See Wilson v. City of Eagan*, 297 N.W.2d 146 (Minn.1980).

In order to analyze Rowe's claims, we must look at the historical context in which Minn.Stat. § 466.04, subd. 2 was adopted in 1963. At that time only husbands could bring an action for loss of consortium. Concern over double recovery was not expressed by this court until our decision in *Thill*, which gave wives, too, an action for loss of consortium, giving rise to the possibility of the same damages being sought by the husband or the wife. 284 Minn. 508, 513–14, n. 8, 170 N.W.2d 865, 869, n. 8 (1969). Without *Thill*, it is unlikely that double recovery was contemplated by the legislature in 1963.

It is, moreover, unlikely that the legislature intended to draw a distinction between tangible and intangible elements of the claim of loss of consortium and to preclude application of a separate damages cap to the former but not the latter. Historically, as SPRMC points out, "loss of services" and "loss of consortium" have been defined and accepted as essentially equivalent. *See Acuff v. Schmit*, 248 Iowa 272, 78 N.W.2d 480 (1956); *See also, Madison v. Colby*, 348 N.W.2d 202, 206 (Iowa 1984) ("the loss of services element has become identified with a recovery for all of the traditional elements of common law consortium"). Given this historical context, we conclude that the legislature intended to include all elements of the loss of consortium claim in the limitation prescribed in subdivision 2.

Public policy considerations support this conclusion. Section 466 was enacted in 1963, shortly after this court prospectively abolished the sovereign immunity of municipalities in *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962). Act approved May 22, 1963, ch. 798, 1963 Minn.Laws 1396. This court subsequently upheld statutes imposing limits on sovereign liability in recognition of the legislature's legitimate public

purpose in protecting the fiscal integrity and stability of the government. *See Snyder v. City of Minneapolis*, 441 N.W.2d 781, 789 (Minn.1989); *Lienhard v. State*, 431 N.W.2d 861, 867 (Minn.1988). The statutory preclusion of separate municipal liability for derivative loss of consortium claims that arise from the same tort is a rational means of protecting the fiscal stability of government. Thus, under the statute, the spouse may recover for loss of consortium damages, but only to the extent that the injured party's damages have not already consumed the maximum amount recoverable under the cap.

This case is distinguishable from *Faber v. Roelofs*, 298 Minn. 16, 25, 212 N.W.2d 856, 862 (1973) where we relied on the "any claimant" language in Section 466.04, subd. 1(a)(1) to apply separate liability caps to a child's claim for personal injury and his father's claim for the child's medical expenses. The law, as reflected in *Faber*, recognizes a separate injury to the parent of an injured child. The father in *Faber* was a separate claimant whose separate claim for medical expenses was not precluded by subdivision 2 of Section 466.04.

Here, the derivative claim for loss of consortium, although recognized as a separate claim, is a "claim for loss of services or loss of support arising out of the same tort" which is not entitled to a separate limitation of liability under the Municipal Liability Statute. Reversing the court of appeals on this issue, we hold that a spouse's claim for loss of consortium is included in the same liability cap that limits recovery by the injured spouse under Minn. Stat. § 466.04.

## II

■ We now determine whether a health insurer with a subrogated claim for medical expenses is a separate claimant entitled to a separate liability cap under Minn.Stat. § 466.04. While this is a case of first impression, the principles of subrogation, our cases, and the policy and purpose underlying Minn.Stat. § 466.04 appear to preclude the application of a separate liability cap to a subrogated claim.

Subrogation involves the substitution of an insurer to the rights of the insured. *See Travelers Indem. Co. v. Vaccari,* 310 Minn. 97, 100, 245 N.W.2d 844, 846 (1976). It is well settled that "an insurer, as subrogee, is entitled to no greater rights than those possessed by the insured, the subrogor. The insurer does not possess any independent rights but merely 'steps in the shoes of the subrogor.'" *St. Paul Fire & Marine Ins. Co. v. Perl,* 415 N.W.2d 663, 665 (Minn.1987) (citing *Metropolitan Transit Comm'n v. Bachman's* 311 N.W.2d 852, 854 (Minn.1981) and *Travelers,* 310 Minn. at 102, 245 N.W.2d at 847)); *see also, Regie de L'Assurance Automobile du Quebec v. Jensen,* 399 N.W.2d 85, 88 (Minn.1987). While we have recognized the right of a contractual subrogee to pursue its claim independently of the subrogor's action in limited instances, *Travelers* 310 Minn. at 102, 245 N.W.2d at 847, we have never created rights in the subrogee separate from or in excess of those held by the subrogor.

The court of appeals has considered application of provisions in the State Tort Claims Act virtually identical to Section 466.04 to an employer's claim to a separate damages cap for payment of an employee's medical expenses. *Bekis v. Schilling,* 357 N.W.2d 362 (Minn.App.1984). The *Bekis* court held that an employer's claim was separate and distinct and thus entitled to a separate liability cap under the statute. *Id.* at 365 (citing *Faber v. Roelofs,* 298 Minn. 16, 212 N.W.2d 856 (1973)). The result in that case, however, was compelled by a workers' compensation statute that provides for a separate cause of action by the employer to recover medical expenses paid to the employee. 357 N.W.2d at 365 (citing Minn.Stat. § 176.061, subd. 7). There is no comparable statute which supports HMOM's separate recovery here. If the legislature had intended separate recovery for subrogees in other circumstances, it could have done so by enacting specific statutory provisions comparable to the worker's compensation statute, *supra,* or to provisions in the no-fault insurance act. *See* Minn.Stat. § 65B.53 (1990). No such provisions have been enacted.

Our decision on this issue is further supported by the policies that underlie subrogation: (1) to prevent double recovery, and (2) to allocate payment according to fault. *See Westendorf by Westendorf v. Stasson,* 330 N.W.2d 699, 703 (Minn.1983). Neither purpose is violated here. No double recovery is had by the injured party. The municipality, the party at fault, has paid to the full extent of its maximum liability. Subrogation is not intended to extend the liability of the tortfeasor which, in this case is capped at $200,000. As with the consortium claimant, the subrogee is entitled to recover from the municipality to the extent that the subrogor's damages have not consumed the entire $200,000 limit prescribed in the statute.

For the foregoing reasons, we hold that a medical provider with a subrogated claim for medical expenses is not a separate claimant entitled to a separate liability cap under Minn.Stat. § 466.04.

We reverse the decision of the court of appeals on the loss of consortium claim and reinstate the judgment of the trial court on this issue. We affirm the court of appeals on the subrogation issue.

Reversed in part and affirmed in part.

YETKA, Justice (dissenting).

I respectfully dissent. It is well established in our law that wife and husband, subject to certain conditions, have separate claims for loss of consortium. *Huffer v. Kozitza,* 375 N.W.2d 480, 482 (Minn.1985); *Thill v. Modern Erecting Co.,* 284 Minn. 508, 170 N.W.2d 865 (1969). In my view, a claim for loss of consortium, as the court of appeals pointed out, comprises undefined or intangible elements as well as "services" and "support" as those terms are used in Minn.Stat. § 466.04, subd. 2 (1990). This interpretation is more consistent with our decision in *Faber v. Roelofs,* 298 Minn. 16, 212 N.W.2d 856 (1973). Thus, Bonnie Rowe could pursue her claim individually for loss of consortium with a separate cap of $200,000.