## BELDIN H. LOFTSGAARDEN v. WILLIAM A. REILING.

126 N. W. (2d) 154.

January 3, 1964—No. 39,015.

*Miley & Narveson* and *David W. Nord,* for appellant.
*Donahue, Kelly & Smith* and *Robert A. Gearin,* for respondent.

SHERAN, JUSTICE.

Appeal from a judgment of the district court.

In a libel action the jury returned a verdict for the plaintiff assessing actual damages as "$0" and punitive damages at $5,000 after the court had ruled that the publication was libelous per se. Defendant's motion for judgment notwithstanding the verdict was granted and judgment was directed in favor of defendant. Although we have not been provided with a settled case, it is clear that the order of the trial court must have been based on the ground that in a libel per se action[1] punitive damages are not recoverable in the absence of actual damage.

There is no statute or controlling Minnesota decision making recovery of punitive damages in an action such as this dependent on the existence of actual damage. Erickson v. Pomerank, 66 Minn. 376, 69 N. W. 39, holds only that exemplary damages claimed by the plaintiff on the theory that defendant maliciously interfered with a natural wa-

---

[1]See, Hammersten v. Reiling, 262 Minn. 200, 115 N. W. (2d) 259, certiorari denied, 371 U. S. 862, 83 S. Ct. 120, 9 L. ed. (2d) 100; High v. Supreme Lodge, 214 Minn. 164, 7 N. W. (2d) 675, 144 A. L. R. 810.

tercourse could not be recovered where it was established by the jury's verdict that defendant did not illegally alter the watercourse involved. And, although Meixner v. Bueckslcr, 216 Minn. 586, 13 N. W. (2d) 754, cites the Erickson case in support of the dictum that exemplary damages may be allowed only when the plaintiff is entitled to compensatory damages, the holding of the Meixner case is simply that under Minn. St. 561.04, where a party seeks recovery of "treble the amount of damages which may be assessed," there must be actual damage in some amount before failure to triple the award can cause prejudice.

The main reason for punitive damages[2] in actions for libel is to deter false, malicious, and provocative attacks upon a persons' reputation. The need for such a deterrent is at least as great where the

---

[2]For the historical background of punitive damages, see 1 Sedgwick, Damages (9 ed.) § 349; 70 Harv. L. Rev. 517; Huckle v. Money, 2 Wils. 205, 95 Eng. Rep. 768; Tullidge v. Wade, 3 Wils. 18, 95 Eng. Rep. 909. The 18th-century English courts noted that such allowance helped to preserve peace and discourage dueling. 1 Sedgwick, Damages (9 ed.) § 350. This is not a compensatory consideration. It is an ancient principle. See, 70 Harv. L. Rev. 518; Holmes, The Common Law, pp. 2-4, 39-42; Exodus 22:9 (double damages for trespass); Statute of Gloucester, 1278 (6 Edward I, c. 5), giving treble damages for waste. The Anglo-Saxon *wergeld* enforced heavy money damages against the insult of physical violence, calculated to encourage resort to the courts instead of to self-help.

See, 2 Greenleaf, Evidence (16 ed.) § 253, n. 2; 2 Sutherland, Damages (4 ed.) c. IX; McCormick, Damages, §§ 77, 118; Oleck, Damages to Persons and Property (Rev. ed.) c. XXVI; Note, 70 Harv. L. Rev. 517, 522; Pollock, Torts (15 ed.) pp. 141-144; Clerk and Lindsell, Torts (11 ed.) pp. 170, 545, 835; Gatley, Libel and Slander (4 ed.) pp. 647, 678; 25 C. J. S., Damages, § 117; 15 Am. Jur., Damages, §§ 270, 271; 33 Am. Jur., Libel and Slander, § 202.

"The actual pecuniary damages, in actions for defamation, as well as in other actions for *torts,* can rarely be computed, and are never the sole rule of assessment." Tillotson v. Cheetham, 3 Johns. (N. Y.) 56, 63. "Indeed, in many actions, such as slander, libel, seduction, etc., there is no measure of damages by which they can be given as compensation for the injury, but are inflicted wholly with a view to punish, and make an example of the defendants." Stimpson v. The Rail Roads (3 Cir.) 1 Wall. Jr. 164, 170. Accord, Day v. Woodworth, 54 U. S. (13 How.) 363, 14 L. ed. 181.

person libeled cannot show actual loss in money caused by the false statement as where some measurable damage is provable by the plaintiff.[3] The defendant whose false charges have been circulated should not be the beneficiary of the circumstance that the plaintiff's character is so well established among his business and professional associates as to preclude proof of specific loss springing from communication of the libel.[4]

We conclude that in actions for libel per se punitive damages are recoverable without proof of actual damage. The conclusion we have adopted, although contrary to the decisions of some states,[5] has respectable support in the authorities,[6] and represents what we consider to be the better rule in that it recognizes the intangible harm[7]

---

[3]As stated in Prince v. Brooklyn Daily Eagle, 16 Misc. 186, 190, 37 N. Y. S. 250, 253: "A person may be of such high character that the grossest libel would damage him none; but that would be no reason for withdrawing his case from the wholesome, if not necessary, rule in respect of punitive damages. It is in such cases that the rule illustrates its chief value and necessity."

[4]In Reynolds v. Pegler (S. D. N. Y.) 123 F. Supp. 36, affirmed (2 Cir.) 223 F. (2d) 429, certiorari denied, 350 U. S. 846, 76 S. Ct. 80, 100 L. ed. 754, the law was stated to be that "the jury may award substantial exemplary damages even though no actual financial injury has been suffered." 123 F. Supp. 37. To hold otherwise "would require punitive damages to be determined in inverse ratio to the reputation of the one defamed." Id. 38.

[5]Annotation, 17 A. L. R. (2d) 527.

[6]Restatement, Torts, § 908; 17 A. L. R. (2d) 545; McCormick, Damages, §§ 83, 118. In Clark v. McClurg, 215 Cal. 279, 9 P. (2d) 505, 81 A. L. R. 908, the verdict was the same as in the instant one, except that actual damage was in blank and not, as here, for "$0." The court said (215 Cal. 284, 9 P. [2d] 507, 81 A. L. R. 911): "Hence where, as here, the publication is * * * libelous per se, * * * a cause of action for actual or compensatory damages is conclusively established. [Citations omitted.] Respondent must, therefore, be held to have established her right to compensatory damages, and the fact that the jury, inadvertently or by some mischance, assessed the entire damages as exemplary, instead of segregating them, constitutes an error of form rather than of substance."

[7]"But it is doubtful whether the better view is not that they [exemplary damages] are consolatory rather than penal. resting upon the principle that

caused by false, irresponsible accusations and the need for discouraging such conduct in the interests of social harmony.

The order of the trial court setting aside the verdict is reversed. The case is remanded with instructions that judgment be entered for plaintiff for damages in the amount set out in the verdict of the jury.

Reversed.

---

where there is malice the plaintiff suffers from a sense of wrong, and is entitled to a *solatium* for that mental pain." Clerk and Lindsell, Torts (11 ed.) p. 170.

In Ley v. Hamilton, 153 L. T. Rep. 384, 386, the highest appellate tribunal in England stated with respect to damages for defamation: "They are not arrived at as the Lord Justice seems to assume by determining the 'real' damages and adding to that a sum by way of vindictive or punitive damages. It is precisely because the 'real' damage cannot be ascertained and established that the damages are at large." See, also, Boyd v. Boyd, 116 Va. 326, 82 S. E. 110, Ann. Cas. 1916D, 1173; Rickbeil v. Grafton Deaconess Hospital, 74 N. D. 525, 23 N. W. (2d) 247, 166 A. L. R. 99. In Gambrill v. Schooley, 93 Md. 48, 66, 48 A. 730, 733, 52 L. R. A. 87, 91, 86 A. S. R. 414, 421, the court said: "The words used here being actionable per se, although there was no proof of actual and substantial damages sustained by the publications to Miss Willis [defendant's stenographer] of the two letters, the jury could not properly have been deprived of their discretion to give exemplary damages * * *."