**F. A. ROWORTH, Appellant,**

v.

**MINNESOTA MUTUAL LIFE INSURANCE COMPANY, a Minnesota corporation, and Northwest Airlines, Inc., a Minnesota corporation, Appellees.**

No. 81–1396.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1981.

Decided April 8, 1982.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Laura S. Underkuffler, O. C. Adamson, II, Minneapolis, Minn., for appellees.

Hvass, Weisman & King, Chartered, Richard A. Williams, Jr., Minneapolis, Minn., for appellant.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and HUNTER,* Senior District Judge.

McMILLIAN, Circuit Judge.

■ F. A. Roworth appeals from a directed verdict entered in the District Court[1] for the District of Minnesota dismissing his complaint seeking punitive damages against Northwest Airlines, Inc.[2] on the basis of an alleged conversion of insurance proceeds. For reversal appellant argues that the district court erred in refusing to submit the issue of punitive damages to the jury. In response appellee argues that there was no evidence to support a verdict for punitive damages.[3] For the reasons discussed below, we affirm.

Appellant was employed by Northwest Airlines, Inc. (Northwest) as a flight engineer for thirty-one years. As an employee appellant was a third-party beneficiary of a group life and disability insurance contract between Northwest and Minnesota Mutual Life Insurance Company (Minnesota Mutual). The group policy provided benefits to employees in the event they became permanently and totally disabled. Under the policy Minnesota Mutual was responsible for determining a claimant's eligibility for benefits.

In June 1976, appellant failed a physical examination administered by Dr. Fred Ellis, an FAA designated physician located in the state of Washington. Dr. Ellis diagnosed appellant as having a heart condition known as a left bundle branch block, which put his flight status in question. The diagnosis was confirmed by Dr. Carver at the Mayo Clinic in Rochester, Minnesota, in July 1976.[4]

On January 25, 1977, appellant submitted an application for disability insurance benefits to Minnesota Mutual. The claim was processed and on May 9, 1977, Minnesota Mutual issued a benefit check payable to the order of appellant and forwarded the check to Northwest in accordance with the normal procedure for administering the contract.

During the month of June 1977, appellant made various inquiries to Minnesota Mutual

---

* The Honorable Elmo B. Hunter, United States Senior District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

2. Minnesota Mutual Life Insurance Company was initially joined as a defendant. However, appellant dismissed it prior to trial.

3. Northwest also argued that appellant's sole remedy was in contract and, therefore, punitive damages were not available. The insurance contract is not part of the record and therefore we have not seen it. However, it appears that under Minnesota law appellant's complaint does state a cause of action in conversion. "Under Minnesota law, conversion has been defined as an act of wilful interference with the personal property of another which is without

justification or inconsistent with the rights of the person entitled to the use, possession or ownership of the personal property." *Thorp Commercial Corp. v. Northgate Indus., Inc.*, 490 F.Supp. 197, 201 (D.Minn.1980) (citations omitted). Moreover, the "[i]nnocent misapplication or deprivation of funds owned by others is in the law no less a conversion because such was done innocently or in ignorance." *Hauser v. Farwell, Ozmun, Kirk & Co.*, 299 F.Supp. 387, 395 (D.Minn.1969). Based on the foregoing principles we will assume, without having seen the contract, that Northwest's retention of appellant's check was a conversion.

4. Dr. Carter also advised appellant and Northwest that if appellant could pass an angiogram, he could be returned to flying status. Appellant refused to undergo the angiogram because of the health risks involved.

and Northwest regarding the status of his claim. On July 7, 1977, Mr. Tony Ettel, Director of Employer Services for Northwest, advised appellant that he would not be entitled to the check until his accrued vacation and sick leaves were exhausted and his subsequent application for disability retirement benefits was approved by the Pilots' Retirement Board.

On January 28, 1978, after the vacation and sick leave accruals were exhausted, appellant was advised that the Pilots' Retirement Board required a doctor's opinion that he was presently disabled before his application for disability benefits could be approved. The check, meanwhile, was not released. Appellant made two additional demands for the check on April 18 and May 5, 1978. Neither demand was responded to.

In September 1978, appellant's disability pension was approved by the Pilots' Retirement Board.[5] Finally, on April 18, 1979, after the present action had been initiated, appellant received a check for the insurance proceeds plus accrued interest.[6]

At trial the parties agreed that the sum received satisfied the element of legal damages. Therefore, the only issue was whether appellant was entitled to punitive damages. James H. Redeske, Vice-President of Northwest Personnel, testified that the insurance policy had been in effect since 1938, and that the procedure followed for the administration of the policy in the present case is that which has always been followed. Redeske testified that when the lump sum disability payment check comes to Northwest for forwarding to the employee, Northwest will review whether the employee is currently disabled and whether active employment status has been severed. He further testified that although there is no language in the policy which conditions disability payments on the exhaustion of an employee's sick leave and vacation benefits, that is the way the contract has always been administered and further that this was the first time that Northwest's interpretation of the policy had been challenged. On the basis of that evidence the district court granted Northwest's motion for a directed verdict finding that there was no evidence to sustain any verdict for punitive damages. We agree.

Under Minnesota law punitive damages are allowed "only where the harm complained of is the result of conduct done in malicious, willful, or reckless disregard for the rights of others." *Wilson v. City of Eagan*, 297 N.W.2d 146, 150 (Minn.1980), citing *Huebsch v. Larson*, 291 Minn. 361, 191 N.W.2d 433, 435 (Minn.1971). Appellant is correct in arguing that malice means "nothing more than the intentional doing of a wrongful act without legal justification or excuse or, otherwise stated, the willful violation of a known right." *Carnes v. St. Paul Union Stockyard Co.*, 164 Minn. 457, 205 N.W. 630, 631 (1925). However, a good faith, albeit mistaken, belief as to another party's legal rights will not support a claim for punitive damages. *See Wilson v. City of Eagan*, 297 N.W.2d at 151; *Peterson v. Sorlien,* 299 N.W.2d 123, 129 (Minn.1980), cert. denied, 405 U.S. 1031, 101 S.Ct. 1742, 68 L.Ed.2d 227 (1981), citing *Benson Cooperative Creamery Ass'n v. First District Ass'n*, 276 Minn. 520, 151 N.W.2d 422 (1967).

In the present case all the evidence indicates that Northwest's handling of appellant's disability claim was done on the good faith belief that lump sum payments under the Minnesota Mutual policy were not to be made as long as an employee maintained active employment status or until a positive determination of the employee's total and permanent disability had been made by the Pilots' Retirement Board. The evidence was uncontroverted that North-

---

**5.** Part of the reason for the delay in approving appellant's disability pension was a strike of Northwest's pilots in April 1978. Appellant refused to travel from Seattle to Rochester on a Northwest plane while the strike was in progress thus delaying his final medical examination which was scheduled at the Mayo Clinic.

**6.** By this time the check had become stale and Northwest had to return it to Minnesota Mutual for reissuance on November 1, 1978. The new check was issued by Minnesota Mutual on April 6, 1979.

west had administered the disability program in this manner for many years and that the procedure had never been challenged. In addition, appellant conceded at trial that the dispute was a difference of opinion as to how the program should be administered. *Roworth v. Minnesota Mutual Life Insurance Co.,* No. 3–78–427 (D.Minn. May 28, 1981), Transcript at 56–57. Therefore, even if appellant is given the benefit of all possible inferences, the most that can be said is that the delivery of his check was delayed because of a good faith but mistaken belief by Northwest as to the manner in which the disability program was to be administered. Under such circumstances there is no ground for assessing punitive damages. *See Benson Cooperative Creamery Ass'n v. First District Ass'n,* 276 Minn. 520, 151 N.W.2d 422.

The judgment of the district court is affirmed.