Robert BUCKO, et al., Respondents,

v.

FIRST MINNESOTA SAVINGS BANK, F.S.B. f/k/a First Federal Savings and Loan, Appellant,

Charles L. Yeschke, Defendant.

No. C8–89–1344.

Court of Appeals of Minnesota.

March 6, 1990.

Review Granted April 25, 1990.

James H. Kaster, Nichols, Kaster & Anderson, Minneapolis, for respondents.

James T. Martin, Gislason, Martin & Varpness, P.A., Edina, for appellant.

Considered and decided by FORSBERG, P.J., and FOLEY and SHORT, JJ.

## OPINION

SHORT, Judge.

In an action brought under Minn.Stat. § 181.75, subd. 4 (1988) (authorizing a private cause of action against an employer who requests a polygraph test), First Minnesota Savings Bank (bank) appeals from a judgment entered following a jury verdict. The bank argues on appeal (a) the evidence was insufficient to award punitive damages to any of the respondents, (b) respondent Jodi Lynn Crace was not entitled to punitive damages without an accompanying award of compensatory damages, (c) the Crace claim was improperly consolidated with the claims of respondents Terrence Jaskowiak and Robert Bucko; and (d) the award of attorney fees and costs was contrary to Minn.R.Civ.P. 68. Respondents

challenge only the trial court's order granting less than requested attorney fees and other expenses.

We reverse the awards of punitive damages to respondents Jaskowiak and Bucko, and affirm the trial court in all other respects.

## FACTS

The solicitation of polygraph testing by employers has been illegal in Minnesota since 1976. The bank began using polygraph testing in August of 1980. The first instance of solicitation occurred during an investigation into the loss of $1,500.00 at a branch office. Robert Cornell, the vice president in charge of security, asked several employees to take polygraph tests. One employee who took the test failed and was fired. Testimony conflicted as to whether the test result was the sole reason for his firing. An unemployment compensation appeals tribunal determined the evidence of the employee's misconduct was insufficient to deny him benefits. The tribunal chairman commented that polygraph tests are useful employment tools, but are inadmissible in court. The chairman did not mention that soliciting polygraph tests was illegal in the employment context.

The tests were administered by Charles Yeschke, a professional polygraph examiner, who was not a bank employee.[1] Yeschke was aware of Minn.Stat. § 181.75 when he administered the test. However, he testified that he never informed the bank of the existence of Minn.Stat. § 181.75. Further, he denied knowing the bank had solicited the polygraph tests and, in fact, obtained written releases from all the employees, including the respondents, acknowledging they were taking the test voluntarily and at their request.

Cornell testified that although he was in charge of security, he had no training in that area, and was primarily a branch manager. He testified he did not learn of the polygraph statute until October of 1984.

---

1. Yeschke was originally a named defendant in this lawsuit. The claim against him was dismissed at the close of evidence and no appeal was taken. The bank stipulated that Yeschke was an agent of the bank, and that any injury caused by him may be imputed to the bank.

The bank's in-house lawyer, David Nelson, testified he too did not learn of the polygraph statute until October of 1984, when outside counsel informed him of it. Nelson's duties and expertise were primarily in the areas of commercial and regulatory law. Nelson attended the unemployment compensation hearing in November of 1980, at which the chairman spoke approvingly of polygraph tests. Nelson testified he had researched the admissibility of evidence of polygraph testing, but had not discovered the statute criminalizing employer solicitation of polygraph tests.

The next polygraph testing incident at the bank was during an investigation of $3,000.00 missing from a bank warehouse vending machine. Seven employees, including respondents Bucko and Jaskowiak, were asked to take the test. Bucko had been employed at the bank for less than a year. Before taking the test, he admitted to stealing $32.00 from the machine and using a company credit card for personal expenses. Bucko took and failed the polygraph test on December 10, 1980. The bank fired him on December 13.

Jaskowiak had been employed at the bank for three months at the time of the polygraph request, and he had no duties related to the vending machine. Nevertheless, the bank asked him to take a polygraph test. He did so on December 11, passed the test, and remained employed at the bank for two more years.

In January of 1981, the bank hired Allen Lavanger as its security officer, to serve under the supervision of Cornell. Lavanger had first-hand knowledge of the polygraph statute, but continued to use polygraph tests during his investigations. Lavanger testified he advised employees they were not required to take the test. He also said his practice was to ask the employees whether they would take a polygraph test if law enforcement officials asked them to do so.

In February of 1982, $200.00 disappeared from a teller area at a bank branch. Respondent Crace testified a bank employee investigating the loss asked her, if she would take a polygraph test. She said she would, but was never asked to do so.

Lavanger testified he asked Crace to take the test, but had done so in the manner described above. Testimony conflicted as to whether Crace was adversely affected by the bank's conduct. She did not leave the bank's employment until September of 1982. Evidence was introduced showing that the bank continued to request polygraph examinations of employees until October of 1984, when a former employee sued the bank for violating the polygraph statute. The case was referred to outside counsel, who informed the bank of the polygraph statute. The bank stopped requesting polygraph exams at that point.

The bank offered each plaintiff $5,000.00 to settle their claims pursuant to Minn.R. Civ.P. 68, but each plaintiff declined. Before trial, the trial court granted plaintiffs' motion to consolidate the three claims. The jury awarded $800.00 in general damages to respondent Bucko, $3,500.00 in general damages to respondent Jaskowiak, and no general damages to respondent Crace. The jury awarded $33,333.33 in punitive damages to each of the respondents. The trial court entered judgment accordingly. The trial court also determined that respondents jointly incurred $30,000.00 in attorney fees, $6,500.00 in law clerk and paralegal fees, and $5,314.17 in expenses. The trial court entered judgment for these amounts against appellant, to be divided equally among the respondents.

## ISSUES

I. Was the evidence sufficient to support the punitive damages awards against the bank?

II. Are punitive damages available under Minn.Stat. § 181.75, subd. 4 (1988) without actual damages?

III. Did the trial court abuse its discretion in consolidating claims for trial?

IV. Did the trial court abuse its discretion in awarding attorney fees to respondents?

V. Did the trial court abuse its discretion as to the amount of attorney fees it awarded?

VI. Are respondents entitled to attorney fees incurred in this appeal?

## ANALYSIS

### I.

Minnesota law has prohibited employers from requesting or requiring their employees to take polygraph tests since 1973. *See* 1973 Minn.Laws ch. 667, § 1. A 1976 revision of the polygraph statute authorized a private cause of action against employers who violate the polygraph law. *See* 1976 Minn.Laws ch. 256, § 1. The law provides in relevant part:

Subdivision 1. Prohibition, penalty. No employer or agent thereof shall directly or indirectly solicit or require a polygraph, voice stress analysis, or any test purporting to test the honesty of any employee or prospective employee. No person shall sell to or interpret for an employer or the employer's agent a test that the person knows has been solicited or required by an employer or agent to test the honesty of an employee or prospective employee. An employer or agent or any person knowingly selling, administering, or interpreting tests in violation of this section is guilty of a misdemeanor. If an employee requests a polygraph test any employer or agent administering the test shall inform the employee that taking the test is voluntary.

\* \* \* \* \* \*

Subd. 4. Individual remedies. In addition to the remedies otherwise provided by law, any person injured by a violation of this section may bring a civil action to recover any and all damages recoverable at law, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court. The court may, as appropriate, enter a consent judgment or decree without a finding of illegality.
Minn.Stat. § 181.75 (1988).

Under the polygraph statute, Minn.Stat. § 181.75, subd. 4, a person "injured by a violation of this section" may recover "any and all damages recoverable at law." Punitive damages are recoverable at law, *see* Minn.Stat. § 549.20 (1988), and are therefore available under the polygraph statute.

■ Appellate courts exercise "close control" over the imposition and amount of punitive damage awards. *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 835 (Minn.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *see Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876, 891–92 (Minn.1986). However, the weight and force to be given evidence relating to punitive damages is exclusively a jury question. *Wilson v. City of Eagan*, 297 N.W.2d 146, 150 (Minn.1980). Punitive damages are allowed only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others. Minn.Stat. § 549.20, subd. 1. A good faith but mistaken belief as to another party's legal rights will not support a claim for punitive damages. *Roworth v. Minnesota Mutual Life Insurance Co.*, 674 F.2d 756, 758 (8th Cir.1982) (applying Minnesota law); *see Peterson v. Sorlien*, 299 N.W.2d 123, 129–30 (Minn.1980), *cert. denied* 450 U.S. 1031, 101 S.Ct. 1742, 68 L.Ed.2d 227 (1981).

■ On the record of this case, we find no evidence, let alone clear and convincing evidence, that any employee of the bank knew of the polygraph statute prior to hiring Lavenger as security officer in January of 1981. Although there is no question vice president Cornell and lawyer Nelson were negligent in failing to make themselves aware of the polygraph statute, negligence is not an adequate basis upon which to award punitive damages. *See Metag v. K-Mart Corp.*, 385 N.W.2d 864, 867 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. June 23, 1986).

Respondents Bucko and Jaskowiak were asked to take polygraph tests in December

of 1980. Because there is no clear and convincing evidence that the bank was willfully indifferent to their rights, we reverse the punitive damage awards to Bucko and Jaskowiak.

Respondent Crace, however, was asked to take a polygraph test in February of 1982, long after the bank hired Lavanger as its security officer. Lavanger admitted he knew of the polygraph statute, but continued to ask employees whether they would take the test. While Lavanger's careful wording of his request amounted to no more than a request to take the polygraph if requested, the jury was within its discretion to find this conduct was a willful violation of the polygraph statute. *See Kamrath v. Suburban National Bank*, 363 N.W.2d 108, 111 (Minn.Ct.App.1985) ("It seems clear that the legislature meant to prohibit any requests from the employer, on behalf of anyone, to take a polygraph test, because the employee will inevitably feel coerced."). Before we can determine the propriety of the punitive damage award to Crace, however, we must determine whether the fact that Crace received no actual damages precludes a punitive damage award.

## II.

Respondent Crace was awarded $33,-333.33 in punitive damages, but no compensatory damages. The statute states that any person "injured by" a violation of the law may recover whatever damages are available at law. Minn.Stat. § 181.75, subd. (4). The statute does not define "injure." Dictionary definitions suggest the term is broader than the term "damage." *See* Black's Law Dictionary 706 (5th ed. 1979) (injure means "to violate the legal right of another or to inflict an actionable wrong. To do harm to, damage, or impair.") It is not clear, therefore, whether the legislature intended to permit punitive damages in the absence of compensatory damages under the polygraph statute.

█ The general rule is that punitive damages are not available without actual or compensatory damages. *Meixner v. Buecksler*, 216 Minn. 586, 591, 13 N.W.2d 754, 757 (1944). This rule, however, is not absolute.[2] An exception has been carved for defamation per se cases because of the intangible nature of the harm addressed by the tort. *Loftsgaarden v. Reiling*, 267 Minn. 181, 183–84, 126 N.W.2d 154, 155–56 (1964), *cert. denied*, 379 U.S. 845, 85 S.Ct. 31, 13 L.Ed.2d 50 (1964). The supreme court expanded the exception to include claims brought under civil rights laws. *See Potter v. LaSalle Court Sports & Health Club*, 384 N.W.2d 873, 876 (Minn.1986); *City of Minneapolis v. Richardson*, 307 Minn. 80, 91, 239 N.W.2d 197, 204 (1976); *see also Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 572 (Minn.1987) (noting, in a wrongful discharge case, that "punitive damages are appropriate when otherwise wrongs may go unredressed."); *Wilson*, 297 N.W.2d at 150 (noting punitive damages are appropriate in actions where actual compensatory damages are likely to be low).

█ The emerging rule is that punitive damages are available without compensatory damages in actions designed to remedy "intangible" harms. *See Jacobs v. Farmland Mutual Insurance Co.*, 377 N.W.2d 441, 444 (Minn.1985). We therefore examine the polygraph tort to determine whether it is aimed primarily at compensating tangible injury, or at intangible injury.

In *State v. Century Camera, Inc.*, 309 N.W.2d 735 (Minn.1981), the court upheld the polygraph statute against a constitutional challenge. In determining that the state interest in restricting polygraphs was substantial, the court listed the interests advanced by the statute as:

**2.** As the supreme court said in *Jacobs v. Farmland Mutual Insurance Co.*, 377 N.W.2d 441, 445 (Minn.1985):

> [T]o avoid punitive damages being a loose cannon on the legal deck, courts prefer not to allow punitive damages unless the plaintiff

has been harmed, and ordinarily the best way to define the harm is to require compensable harm.

The court went on to hold punitive damages are not available in an action for recission based on the "atypical" facts of the case before the court.

encouraging the maintenance of a harmonious atmosphere in employment relationships which may be disturbed by the coercion to take a polygraph or similar examination; protecting an employee's expectation of privacy which he or she may have if the questions put during these examinations are personal, private, or confidential; discouraging practices which demean or appear to demean the dignity of an individual employee in a significant way; protecting employees from adverse inferences drawn if they refuse to take these tests; and avoiding the coercive impact present in the solicitation.

*Id.* at 743.

Thus, the polygraph statute is intended to remedy non-quantifiable injuries to the dignity of the employee. The supreme court held in *Potter* that "[l]ike defamation, the harm caused by discrimination can be intangible yet disruptive of social harmony," and punitive damages are recoverable in discrimination actions without actual or compensatory damages. *Potter,* 384 N.W.2d at 876. The harm caused by violation of the polygraph statute is intangible in the same sense as are the harms caused by defamation per se and discrimination. Punitive damages may thus be awarded in actions brought under the polygraph statute regardless of whether actual or compensatory damages are awarded. *Cf. Kamrath,* 363 N.W.2d at 112 (holding damages for emotional distress are available in an action based on the polygraph statute because the harm "flows naturally from the act constituting the underlying tort."); *Alexander v. Eilers,* 422 N.W.2d 312, 315 (Minn.Ct.App.1988) (noting polygraph statute is intended to remedy coercion by employer over employee).

Our holding is not in conflict with *Freeman v. Q Petroleum Corp.,* 417 N.W.2d 617 (Minn.1988). In *Freeman,* the supreme court held the two year statute of limitations for liability arising upon a penalty does not apply to actions brought under the polygraph statute. In characterizing the statute as non-penal, the court said that the plaintiff's recovery under the statute "is inextricably tied to his actual loss," and that "he can only recover if he can prove damages." *Id.* at 619. The court took care, however, to note that the plaintiff had abandoned his claim for punitive damages, *id.* at 617 n. 1, and was suing for his "actual losses." *Id.* at 619. We think the supreme court was characterizing the claim presented, rather than the polygraph statute.

### III.

■ The trial court is authorized to consolidate actions involving common questions of law or fact. Minn.R.Civ.P. 42.01. Although the trial court has broad discretion under this rule, this discretion must not be exercised so broadly as to sacrifice a fair trial for convenience and economy. *Sorenson v. Kruse,* 293 N.W.2d 56, 62 (Minn.1980). It is an abuse of discretion to order consolidation where it is prejudicial to the separate interests of the parties. *See State v. Priebe,* 284 Minn. 561, 562, 170 N.W.2d 235, 237 (1969).

■ Consolidation in this case was an abuse of discretion. The only issues at trial were the amount of actual damages each plaintiff suffered and the amount of punitive damages each should receive. The issue of actual damages is clearly not a common question and would not warrant consolidation by itself. The other disputed issue, punitive damages, warranted consolidation of the claims of Jaskowiak and Bucko, but not those of Crace. The bank's defense to the punitive damages claim was that it had no knowledge of the polygraph statute and, therefore, its conduct was not willful.

The degree of knowledge present at the time of the solicitation of the tests of Bucko and Jaskowiak was the same. However, the hiring in January of 1981 of a security officer with actual knowledge of the polygraph statute materially changed the degree of knowledge imputable to the bank as to the claim by Crace. Consolidation thus made necessary the introduction of evidence irrelevant to the claims of Bucko and Jaskowiak, and prejudiced the bank's defense. The jury's award of equal

amounts of punitive damages to each of the three respondents demonstrates it did not distinguish between the bank's degree of knowledge before and after January of 1981. This error does not warrant reversal, however, because of our reversal of the punitive damages awards to Jaskowiak and Bucko.

## IV.

 Respondents claim they are entitled to attorney fees and other expenses incurred in pursuing their claims. On March 27, 1987, however, appellant made the following offer to each respondent:

> Pursuant to Rule 68, Rules of Civil Procedure for the District Courts, defendant * * * offers to allow judgment to be entered against it in the amount of $5,000 inclusive of costs and disbursements and attorney's fees accrued as of the date hereof.

Relying on *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), appellant argues these offers preclude respondents' awards of costs, including attorney fees. We disagree.

In *Marek* the Supreme Court construed Fed.R.Civ.P. 68 to cut off a civil rights plaintiff's right to recover post-offer costs, including attorney fees, after he declined a Rule 68 offer which was more favorable [3] than his eventual recovery. *Id.* 473 U.S., at 12, 105 S.Ct. at 3018. The present case involves Minn.R.Civ.P. 68, not its federal counterpart. A critical difference between Minnesota's Rule 68 and the federal rule prevents us from applying the *Marek* holding.

Implicit in *Marek* and its progeny is the notion that federal Rule 68 shifts to the offeree the burden of paying the offeree's own costs as well as the offeror's costs.[4] By contrast, the current version of Minn.R. Civ.P. 68 shifts only the offeror's costs onto the offeree.[5] Minnesota Rule 68 provides, in part:

> At any time prior to 10 days before the trial begins, any party may serve upon an adverse party an offer to allow judgment to be entered to the effect specified in the offer or to pay or accept a specified sum of money, with costs and disbursements then accrued, either as to the claim of the offering party against the adverse party or as to the claim of the adverse party against the offering party. * * * *If the judgment finally entered is not more favorable to the offeree than the offer, the offeree must pay the offeror's costs and disbursements.* The fact that an offer is made but not accepted does not preclude a subsequent offer.

Minn.R.Civ.P. 68 (emphasis added.) Our rule simply says nothing about who is to pay the offeree's costs.

Minn.R.Civ.P. 68 thus does not preclude a successful plaintiff under the polygraph statute from recovering costs, including attorney fees, incurred after a Rule 68 offer which is more favorable than the eventual recovery. We recognize that Minn.R.Civ.P. 68, as we have construed it, does not provide much incentive for a polygraph statute plaintiff to accept a Rule 68 offer. To construe Rule 68 as the bank suggests, however, would be contrary to its clear language. We cannot ignore the unambiguous language of the rule in order to effec-

---

3. Some litigation has occurred on the issue of how to determine whether a judgment is "more favorable" than a Rule 68 offer. It is now clear that federal Rule 68 bars the plaintiff's award of costs (including attorney fees) if the offer exceeds the sum of the costs accrued at the time of the offer (including attorney fees) and the damages awarded. *See O'Brien v. City of Greers Ferry,* 873 F.2d 1115, 1118 (8th Cir.1989); *Grosvenor v. Brienen,* 801 F.2d 944, 948 (7th Cir.1986); *Lawrence v. City of Philadelphia,* 700 F.Supp. 832, 836 (E.D.Pa.1988); *Staples v. Wickesberg,* 122 F.R.D. 541, 545 (E.D.Wis.1988).

4. Federal Rule 68 provides, in relevant part:

> If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed.R.Civ.P. 68.

5. Until 1985, Minnesota Rule 68 was virtually identical to the federal rule, stating in relevant part:

> If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs and disbursements incurred after the making of the offer.

Minn.R.Civ.P. 68.01 (1984) (amended by Minn. R.Civ.P. 68 (Supp.1985) (effective July 1, 1985)).

tuate its supposed intent. *See* Minn.Stat. § 645.16 (1988). Because all three respondents established injury under the statute, they are entitled to costs, including attorney fees, under Minn.Stat. § 181.75, subd. 4.

## V.

The trial court found the hourly rates charged by attorneys for respondents were reasonable. This finding is not challenged. The trial court determined, however, that "approximately one-half of [requested] hours were not reasonably necessary for the successful presentation of these cases." Respondents challenge this determination.

The reasonableness of hours claimed for an attorney fee award is a question of fact, left to the discretion of the trial court. *Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). This court will reverse a finding on the reasonableness of attorney fees only if it is clearly erroneous. *Kamrath,* 363 N.W.2d at 112. The trial court is permitted to exclude from the "lodestar" figure hours that were not "reasonably expended." *Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 629 (Minn.1988). The trial court must, however, "make findings or otherwise concisely explain why it felt the hours claimed are reasonable or unreasonable." *Id.* at 630. Failure to do so will result in remand. *Id.*

The trial court based its reduction of claimed hours on three findings. First, respondents' attorney had previously tried a number of cases under the polygraph statute. Second, the issues presented in this case were generally not novel because appellant admitted liability, contesting only the amount of damages at trial. Finally, the consolidation of the three claims made less hours justifiable. We note the trial court had before it affidavits listing and explaining all hours of attorney time. The parties submitted briefs on the issue of attorney fees, which the trial court apparently considered. Under these circumstances, we cannot say the trial court's decision to deny claimed hours was clearly erroneous.

Appellant urges this court to limit the amount of attorney fees to the terms of the fee agreement between the respondents and their attorney.[6] Appellant's authority for this proposition has been reversed by the United States Supreme Court. *See Blanchard v. Bergeron,* 831 F.2d 563 (5th Cir.1987), *rev'd,* —— U.S. ——, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The Supreme Court made clear that the private fee agreement between the plaintiff and its attorney is a factor, but not a dispositive one, in setting the award. *Blanchard,* —— U.S. at ——, 109 S.Ct. at 944. To hold otherwise would defeat the purpose of the statute authorizing attorney fees. *Id.*

Because the fee agreement in this case appears to have been a poor indicator of the value of the attorney's services, the trial court was not clearly erroneous in disregarding it in computing attorney fees.

## VI.

Respondents request costs, including attorney fees, incurred in this appeal. In actions under the Minnesota Human Rights Act, Minn.Stat. ch. 363 (1988), attorney fees on appeal are available to the prevailing party. *In re Application of Hixson,* 434 N.W.2d 1, 3 (Minn.Ct.App. 1988), *pet. for rev. denied* (Minn. Mar. 30, 1989); *Anderson v. Hunter, Keith, Marshall & Co.,* 401 N.W.2d 75, 83 (Minn.Ct. App.1987) *aff'd in part, rev'd in part,* 417 N.W.2d 619 (Minn.1988); *Tretter v. Liquipak International, Inc.,* 356 N.W.2d 713, 716 (Minn.Ct.App.1984). The statute authorizing these fees does not explicitly apply to fees on appeal. *See* Minn.Stat. § 363.14, subd. 3 (1988). However, it would be inconsistent with the clear legislative intent to dilute a fee award by denying

6. According to a document filed in the trial court by Mr. Kaster, attorney for the plaintiffs: Although Plaintiffs' counsel has charged fees on a [sic] hourly basis, payment was entirely contingent on a successful conclusion of the case.

fees for appellate work. *Anderson,* 401 N.W.2d at 83.

This reasoning is equally applicable to appeals of actions brought under the polygraph statute. Because all three respondents demonstrated injury under the polygraph statute, they are entitled to reasonable attorney fees on appeal if they file the appropriate petition with this court within ten days of the filing of this opinion. *See* Minn.R.Civ.App.P. 127; *see also Anderson,* 401 N.W.2d at 83. Respondent may file a response pursuant to Rule 127.

## DECISION

The awards of punitive damages to respondents Bucko and Jaskowiak are reversed because there is no clear and convincing evidence that the bank was willfully indifferent to their rights. Respondents may file a timely petition for attorney fees incurred on this appeal pursuant to Minn.R. Civ.App.P. 127. The trial court is affirmed in every other respect.

Affirmed in part, reversed in part.