Robert BUCKO, et al., Petitioners,
Appellants,

v.

FIRST MINNESOTA SAVINGS BANK,
F.B.S. f/k/a First Federal Savings and
Loan, Petitioner, Respondent,

Charles L. Yeschke, Defendant.

No. C8–89–1344.

Supreme Court of Minnesota.

June 7, 1991.

James H. Kaster, Nichols, Kaster & Anderson, Minneapolis, for appellants.

James T. Martin, Gislason, Martin & Varpness, Edina, for respondent.

TOMLJANOVICH, Justice.

This appeal relates to awards of punitive damages and attorney fees for violations of Minn.Stat. § 181.75, prohibiting employee polygraph testing.

In 1976, the Minnesota Legislature deleted the phrase "by coercion" from the statute prohibiting employers from soliciting or requiring polygraph tests of their employees or prospective employees. *See* Act of April 13, 1976, ch. 256, § 1, subd. 1, 1976 Minn. Laws 950 *codified at* Minn.Stat. § 181.75, subd. 1 (1990). The legislature also added criminal penalties, injunctive remedies, and a private cause of action to the statute. The polygraph statute has not been amended since then.

As of December 1980, Robert Bucko had worked in the stockroom at First Minnesota Savings Bank for eight months. Bucko had access to cash in a vending machine in the stockroom and took $32 for his personal use. As part of an investigation into losses from the machine, the Bank's security officer asked Bucko and several other employees to take polygraph examinations. Bucko took the examination and "failed," although he was offered the opportunity to take it again. Bucko refused to take the exam again and was terminated the following day.

Terrence Jaskowiak worked with Bucko in the Bank's stockroom. He had no access to cash in the stockroom vending machine, but was asked to undergo a polygraph examination. Although Jaskowiak "passed" the examination, he testified that he was disturbed to be suspected of wrongdoing and felt severe emotional distress as a result of the exam. Jaskowiak ended his employment at the Bank in September 1982.

The Bank asked Jodi Lynn Crace to take a polygraph examination in connection with its February 1982 investigation of losses in her department. Crace did not take the examination, but remained an employee of the Bank. After suffering an assault that was unrelated to her employment, she resigned from the Bank in September 1982.

The Bank ended its practice of requesting employees to take polygraph examinations in 1984, after Bucko, Jaskowiak, and Crace left the Bank but before they began their separate lawsuits in 1986 and 1987.

Bucko, Jaskowiak, and Crace each initiated legal action against the Bank, claiming it violated the polygraph statute when it requested them to submit to polygraph examinations. Each plaintiff also claimed punitive damages against the Bank under the general punitive damages statute, Minn.Stat. § 549.191 (1990). The Bank subsequently made an offer of judgment of $5,000 to each plaintiff pursuant to Minn. R.Civ.P. 68. All three plaintiffs declined the offers and moved to have their actions consolidated for trial. The motion was granted and the case was tried to a jury.

At trial, the Bank conceded liability for violating the polygraph statute but contested what damages it was liable for. The jury awarded Bucko $800 in compensatory damages, Jaskowiak $3,500 in compensatory damages, and Crace $0 in compensatory damages. The jury also awarded each plaintiff $33,333.33 in punitive damages. The trial court awarded all three plaintiffs trial costs and attorney fees, though in amounts substantially less than each requested.

On appeal, the court of appeals reversed the punitive damages awards to Bucko and Jaskowiak, but affirmed the award of punitive damages to Crace. *See Bucko v. First Minnesota Savings Bank*, 452 N.W.2d 244, 253 (Minn.App.1990). The court concluded that although the trial court abused its discretion in granting plaintiffs' motion for consolidation, the error did not require reversal. *See id.* at 250–51. Further, the court held that the Bank's Rule 68 offers of judgment, which exceeded the amount each plaintiff recovered in compensable damages, did not prevent plaintiffs from recovering fees and costs and that the trial court did not abuse its discretion in awarding attorney fees in an amount substantially less than requested. *See id.* at 251–52. Finally, the court granted each plaintiff leave to petition for costs and fees related to their appeals and subsequently awarded costs and fees to each. *See id.* at 253.

All three plaintiffs now contend they are entitled to punitive damages irrespective of whether they are entitled to compensatory damages. All three also contend that the trial court correctly granted their motion for consolidation, that its award of costs and fees is not precluded by the Bank's Rule 68 offers of judgment, and that they are each entitled to costs and fees related to both their appeals before the court of appeals and before this court.

The Bank argues that it is not liable for punitive damages because it was without actual knowledge of the polygraph statute until after its admitted violations of that statute. It further argues that it cannot be liable for punitive damages where no compensable damages were awarded, that its offers of judgment exceeding the compensable damages actually recovered preclude the trial court's award of attorney fees, that Crace should be awarded neither costs nor fees because she is not entitled to any damages, and that the court of appeals erred in awarding costs and fees related to the appeals before it.

I

The Bank contends that it is not liable for punitive damages. We agree with respect to Crace, but reinstate the punitive damage awards to Bucko and Jaskowiak reversed by the court of appeals.

■ In *Freeman v. Q Petroleum Corp.*, 417 N.W.2d 617 (Minn.1988), this court held that the liability created by the polygraph statute is not a civil "penalty," because recovery under the polygraph statute is not "a fixed amount arising solely from a violation," and because "recovery is inextricably tied" to demonstrated actual loss. *Freeman*, 417 N.W.2d at 619. Given this link between damages for violation of the polygraph statute and demonstrated actual loss, we conclude that *any* recovery under that statute requires proof of compensable damages. Because Crace did not demonstrate any compensable loss, we reverse the award of punitive damages to her.

■ The Bank claims it is not liable for punitive damages because its employees did not actually know of the polygraph statute when they violated it. At the time each of the plaintiffs was asked to undergo a polygraph test, the Minnesota punitive

damages statute permitted punitive damages against a defendant who "show[ed] a willful indifference to the rights or safety of others." Minn.Stat. § 549.20 (1988) *amended by* Act of May 3, 1990, ch. 555, § 15, subd. 1(a), 1990 Minn. Laws 1557, 1563 *codified at* Minn.Stat. § 549.20, subd. 1 (1990) (replacing "willful indifference" with "deliberate disregard"). This court has never concluded that a defendant must have actual knowledge of a law in order to be willfully indifferent to rights of others and thereby liable for punitive damages. We are not persuaded that we should do so now.[1]

The jury was properly instructed as to the clear and convincing evidence necessary for a finding of willful indifference and an award of punitive damages. *See Becker v. Alloy Hardfacing & Engineering Co.*, 401 N.W.2d 655, 659 (Minn.1987). Although Bank officers testified they were unaware of the polygraph statute, they admitted requesting Bucko, Jaskowiak and Crace to undergo polygraph testing. Based on this admission, the jury was entitled to find the Bank was willfully indifferent of plaintiffs' rights and thus liable for punitive damages. Recognizing that this court does not disturb an award of punitive damages unless that award is so excessive as to be unreasonable, *see Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 259 (Minn.1980), we conclude that both Bucko and Jaskowiak, who proved compensable damages, are entitled to punitive damages in the amounts awarded at trial.

## II

■ The Bank contends that because its Rule 68 offers of judgment exceeded the compensable damages recovered by each plaintiff, none of the plaintiffs were entitled to an award of trial costs and attorney fees. Minn.R.Civ.P. 68 permits any party to make an offer of judgment in order to encourage settlement prior to trial. "If the judgment finally entered is not more favorable to the offeree than the offer, the offeree must pay the offeror's costs and disbursements." Minn.R.Civ.P. 68. The judgments finally entered for Bucko and Jaskowiak exceed the Bank's offers of judgment to each of them, thus neither Bucko nor Jaskowiak must pay the Bank's trial costs. Both Bucko and Jaskowiak remain entitled to costs and disbursements as awarded pursuant to the polygraph statute. Crace, however, recovered nothing and must therefore pay the Bank's costs and disbursements incurred from the date of its offer of judgment until judgment was entered by the trial court.

■ For purposes of applying Minn. R.Civ.P. 68, "costs" do not include attorney fees. *See* 2A David S. Herr & Roger S. Haydock, *Minnesota Practice* § 68.3 (2d ed. 1985). The Bank's Rule 68 offers of judgment therefore do not alter Bucko's and Jaskowiak's recovery of attorney fees under the polygraph statute and do not entitle the Bank to recover attorney fees from Crace.

## III

■ The Bank contends the trial court abused its discretion by granting the plaintiffs' motion to consolidate their separate actions for trial. Trial courts have broad discretion to consolidate separate lawsuits, *see* Minn.R.Civ.P. 42.01, but must not do so where the convenience and judicial economy achieved by consolidation sacrifices a fair trial. *See Sorenson v. Kruse*, 293 N.W.2d 56, 62 (Minn.1980). The trial record does not indicate the Bank was prejudiced in any way because plaintiffs' ac-

---

**1.** The Bank relies on *Roworth v. Minnesota Mutual Life Ins. Co.*, 674 F.2d 756 (8th Cir.1982), for the proposition that actual knowledge of Minnesota law is a prerequisite to a punitive damages award. In *Roworth*, the Eighth Circuit concluded that Minnesota permits punitive damages " 'only where the harm complained of is the result of conduct done in malicious, willful, or reckless disregard for the rights of others.' " *Id.* at 758 (quoting *Wilson v. City of*

*Eagan*, 297 N.W.2d 146, 150 (Minn.1980)). It further concluded that "malice means * * * 'the willful violation of a known right.' " *Id.* (quoting *Carnes v. St. Paul Union Stockyard Co.*, 164 Minn. 457, 462, 205 N.W. 630, 631 (1925)). The decisions quoted in *Roworth* do not indicate that punitive damages are never appropriate where a plaintiff does not prove the defendant's actual knowledge of the law.

tions were consolidated. Rather, it reflects that the jury considered each action separately and entered judgments that appear independent of one another. We therefore conclude the trial court did not abuse its discretion in granting the motion to consolidate.

### IV

■ Plaintiffs contend the trial court erred by awarding attorney fees in amounts substantially less than each plaintiff requested. When a trial court makes specific findings of fact regarding the reasonableness of an attorney fee award, those findings will not be set aside on review unless they are clearly erroneous. *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 630 (Minn.1988). The trial court accepted plaintiffs' proposed hourly rate in calculating the required "lodestar" figure, *see Anderson*, 417 N.W.2d at 628 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)), but determined that the number of hours claimed by the lead attorney for all three plaintiffs was excessive and reduced each fee award accordingly. Based on our independent review of plaintiffs' petitions for attorney fees, we conclude that the trial court did not clearly err in calculating appropriate attorney fee awards.

### V

■ Plaintiffs contend they are each entitled to costs and attorney fees related to their appeals before both the court of appeals and this court. Where a prevailing plaintiff is entitled by statute to recover attorney fees at trial, that plaintiff may also be entitled to attorney fees on appeal. *See Hughes v. Sinclair Marketing, Inc.*, 389 N.W.2d 194, 200 (Minn.1986). To deny a prevailing plaintiff compensation for fees reasonably incurred in defending a judgment on appeal would defeat the intent of the legislature in providing for recovery of attorney fees. We therefore affirm the court of appeals award of attorney fees to Bucko and Jaskowiak; as Crace is not a prevailing plaintiff, she is not entitled to

attorney fees related to her appeal. Further, Bucko and Jaskowiak may, within ten days of the date on which this opinion is released, petition this court for fees incurred in connection with their appeals before this court. The Bank may file written objections to those petitions within five days after it is served with them.

We therefore reinstate the jury's award of $33,333.33 in punitive damages each to Bucko and Jaskowiak and reverse the award of punitive damages to Crace. We order Crace to pay the Bank's costs and disbursements incurred defending against her action after the March 27, 1987 offer of judgment and before entry of judgment at trial. We reverse the award of costs and attorney fees to Crace and affirm the awards of costs and fees to Bucko and Jaskowiak in the amounts ordered by the trial court. We affirm the court of appeals' order granting costs and attorney fees on appeal before it to Bucko and Jaskowiak and grant Bucko and Jaskowiak ten days from the date of this decision to petition for fees before this court.

GARDEBRING, J., took no part in the consideration or decision of this case.

SIMONETT, Justice (dissenting).

I respectfully dissent from that part of the majority opinion affirming punitive damages for plaintiffs Bucko and Jaskowiak. I agree with the court of appeals panel that unanimously concluded there was no clear and convincing proof of willful indifference in the testing of these two employees.

### I.

The Bank's first use of the polygraph was, apparently, in 1980. In August of that year the Bank administered a polygraph test to employee D.K. The employee failed the test, was fired, and then applied for unemployment compensation. The Bank opposed unemployment compensation on the ground that D.K. had been guilty of theft as proven by the failed polygraph test. A claims deputy granted D.K. benefits and, on November 17, 1980, the Appeals Tribunal affirmed, ruling that

results of the polygraph were not admissible in evidence and, consequently, there was nothing to substantiate the employer's claim of misconduct. David Nelson, the Bank's in-house counsel, in preparation for the hearing, did some research on the admissibility of polygraph test results, but he did not discover Minn.Stat. § 181.75.[1] The employee D.K. had been requested to take the polygraph by Robert Cornell, a bank officer who doubled as security officer. Cornell, too, was unaware that to request a polygraph test was unlawful.

On December 10 and 11, 1980, in connection with a different security matter, the two plaintiffs in this lawsuit, Robert Bucko and Terry Jaskowiak, took the polygraph test, also at the request of Cornell.

In early January 1981, several weeks later, Allen Lavanger, a former FBI agent, succeeded Cornell as the bank's security officer. Lavanger testified he had been told by the head of the Bureau of Criminal Apprehension that there was a state law prohibiting private employers from polygraph testing of their employees. Consequently, Lavanger said his practice was to ask an employee if he or she would submit to a polygraph if requested by law enforcement officers. Lavanger never read the statute.

In October 1984 the Bank was sued for a polygraph test it had requested and taken of an employee in April 1983. The Bank says this is when it first learned about section 181.75, and it then stopped all testing.

The jury was instructed, "Now the acts of the Bank after 1980 as to Mr. Bucko and Mr. Jaskowiak * * * are not to be considered in deciding whether punitive damages should be awarded * * * "; the jury was then further told that any polygraph testing occurring after 1980 "may be used by you in determining the amount of punitive damages if you should find that such damages should be awarded."

## II.

Bucko and Jaskowiak needed to prove that when they were given the polygraph test the Bank either knew or was willfully indifferent to knowing that it was illegal for an employer to ask an employee to take a polygraph test. There was no proof that the Bank knew about section 181.75 and its prohibition against testing in December 1980.[2] Consequently, plaintiff's case for punitive damages depended on showing the Bank was willfully indifferent to knowing the true facts about polygraph testing. For this critical proof, plaintiffs relied on the unemployment compensation proceedings held in August and November of 1980. So far as the record shows, however, at the unemployment compensation proceedings nobody questioned the legality of giving the tests to the employees. Section 181.75, subdivision 2, says the Department of Labor and Industry "shall investigate suspected violations of this section." Significantly, · no investigation ensued following the unemployment compensation proceedings.

The fact that the Bank was unaware of the existence of section 181.75 is not a defense to its violation of the statute and imposition of criminal penalties and compensatory damages. *See* Minn.Stat. § 609.-02, subd. 9(5) (1990) ("Criminal intent does not require proof of knowledge of the existence * * * of the statute under which the actor is prosecuted * * *.") But ignorance of the statute's existence, unless and until it rises to the level of willful indifference, will not support superimposing punitive damages upon compensatory damages.[3]

---

**1.** Minn.Stat. § 181.75, subd. 1 (1980):

No employer or agent thereof shall directly or indirectly solicit or require a polygraph, voice stress analysis, or any test purporting to test the honesty of any employee or prospective employee. * * *

**2.** In his jury summation plaintiff's counsel conceded as much, stating: "They [the Bank] found out *at least back in January 1981* [that it was

illegal to ask employees to take the test] and they didn't stop then." (Emphasis added).

**3.** "It has, of course, been pointed out many times that there is never a 'presumption' that any man knows the law. The proper statement is that, in many situations, ignorance of the law is no excuse—a very different thing." Prosser, *The Law of Torts* § 109, at 724 n. 38 (4th ed. 1971).

For ignorance of the law to constitute willful indifference, it seems to me there has to be proof that the Bank deliberately chose to be unaware of section 181.75. At the very minimum, there has to be a clear and convincing showing of facts known to the Bank that would have put the Bank on inquiry into the legality of soliciting employees to take a polygraph test, and that the Bank, having been put on inquiry, deliberately turned a deaf ear and a blinkered eye.

When the legislature in 1990 changed the wording of the test for punitive damages from "willful indifference" to "deliberate disregard," it did not, in my opinion, change the test; it only clarified the test. The problem with the word "indifference" is that it has several connotations, not all of which are appropriate within the context of punitive damages. In addition to meaning lack of concern or disregard for the rights of others (the correct test), the word "indifference" connotes incuriousness, apathy, or an attitude of listlessness or uninterested neutrality; but none of these additional meanings, even if modified by "willful," connotes the state of mind requisite for punitive damages. (Indeed, to be willfully apathetic is almost a contradiction in terms.)

If Allen Lavanger, not Cornell, had been the security officer in December 1980 when Bucko and Jaskowiak were tested, I would not disturb the jury's verdict on punitive damages. Lavanger had been told there was a statute governing administration of the polygraph but he deliberately did not read the statute to learn what it said. Lavanger, however, came on board about 2 weeks after Bucko and Jaskowiak were tested.

Arguably, the Bank's in-house counsel, while conducting his legal research, should have looked at the statute books and found section 181.75. Negligence law imposes li-

ability for all sorts of "should haves." An automobile driver should have seen the pedestrian. A pedestrian should have looked where she was going. A landlord should have known about an unsafe condition on the premises. But, negligence alone, or, as in this case, violation of a misdemeanor statute regulating employer-employee relations, does not give rise to punitive damages until the further threshold of willful indifference is met.[4]

On this record it does not appear clearly and convincingly that attorney Nelson deliberately chose to be ignorant of section 181.75. Nelson was looking to see if polygraph results were admissible in evidence; a cursory search of the reported cases in this state would have quickly told counsel that the test results were inadmissible, and there would have been no need to search further, at least not insofar as Nelson understood his search. There is no showing that anyone had told Nelson or Cornell of the possible existence of the statute. There was no showing that in 1980 or earlier the statute was a topic of general discussion in the banking community, whether in professional journals or trade newsletters received by First Bank or in seminars or lectures attended by First Bank's officers. In my opinion, as a matter of law the evidence falls short of establishing willful indifference. It would also follow, then, that plaintiffs are not prevailing parties in this appeal and would not be entitled to attorney fees before us, nor do plaintiffs escape paying the bank's costs under Minn. R.Civ.P. 68.

COYNE, Justice (dissenting).

I join the dissent of Justice Simonett.

WAHL, Justice (dissenting in part).

I respectfully dissent only as to the majority's denial of punitive damages to Crace because she could not demonstrate compen-

---

4. Nelson and Cornell are in much the same situation as police officer O'Brien in *Wilson v. City of Eagan*, 297 N.W.2d 146, 151 (Minn.1980). Officer O'Brien, contrary to statute, shot and killed plaintiff's impounded cat without first holding the animal for 5 days. O'Brien, however, had not known the cat had been impound-

ed for less than 5 days. "Assuming that he had a duty to inquire, before killing the cat, breach of that duty is negligence," we said, and then added this negligence is "not the type of malicious, intentional, or willful disregard for plaintiff's rights that would support punitive damages."

sable damages. To make Crace's punitive damages contingent upon suffering an actual loss is inconsistent with the polygraph statute and the purpose behind punitive damages.

While, as a general rule, punitive damages will not be awarded in the absence of actual loss, *Potter v. LaSalle Court Sports & Health Club*, 384 N.W.2d 873, 876 (Minn. 1986), the purpose behind punitive damages, to punish and deter wrongful actions, *Melina v. Chaplin*, 327 N.W.2d 19, 20 n. 1 (Minn.1982), requires, on occasion, an exception to that rule. In the case before us, an employer violates the polygraph statute simply by asking an employee to take a polygraph test. Minn.Stat. § 181.75, subd. 1 (1990). Under the statute, however, an employer is subject to criminal penalties only for administering a test, which leaves the civil remedies contained in section 181.75, subd. 4 as the only means of deterring an employer's unlawful polygraph request. As a result, denial of punitive damages absent proof of actual loss would leave a large number of statutory violations[1] undeterred since it presumably would be a rare individual who will suffer actual damages based solely on an employer's polygraph request. Moreover, as the trial court recognized, it is unlikely that private actions to enforce the statute will be brought unless plaintiffs have a reasonable expectation of recovering damages, which, at least in Crace's case, would be limited to punitive damages.

This result is consistent with the reasoning employed in *Loftsgaarden v. Reiling*, 267 Minn. 181, 183–84, 126 N.W.2d 154, 155–56, *cert. denied*, 379 U.S. 845, 85 S.Ct. 31, 13 L.Ed.2d 50 (1964), where this court held that recovery of punitive damages in a libel per se action was not dependent upon the existence of actual damages, primarily because of the "need for discouraging such conduct in the interests of social harmony." In *Loftsgaarden*, the court recognized that if recovery of punitive damages was contingent upon actual loss, the libelous defendant would benefit where "the plaintiff's character is so well established * * * as to preclude proof of specific loss springing from communication of the libel." 267 Minn. at 183, 126 N.W.2d at 155. Accordingly, society's interest in discouraging libelous conduct in all cases justified the imposition of punitive damages even though the plaintiff could not prove any actual loss. *Id.*

The court has also allowed recovery of punitive damages without proof of actual damages in a discrimination action. We did so, we said, because "[l]ike defamation, the harm caused by discrimination can be intangible yet disruptive of social harmony." *Potter*, 384 N.W.2d at 876.

The polygraph statute requires a similar approach. Society has several interests at stake in discouraging employer polygraph requests including:

> encouraging the maintenance of a harmonious atmosphere in employment relationships which may be disturbed by the coercion to take a polygraph or similar examination; * * * discouraging practices which demean or appear to demean the dignity of an individual employee in a significant way; protecting employees from adverse inferences drawn if they refuse to take these tests; and avoiding the coercive impact present in the solicitation.

*State by Spannaus v. Century Camera, Inc.*, 309 N.W.2d 735, 743 (Minn.1981). Therefore, since these interests are as compelling in the absence of actual damages as when actual damages are present, punitive damages are justified, even absent actual loss, in order to advance society's interest in discouraging unlawful polygraph requests. Here, too, the harm caused is "intangible yet disruptive of social harmony." I would affirm the court of appeals on this issue, leaving untouched the jury's award of punitive damages to Crace.

1. While investigating several monetary losses in 1983, the defendant bank in this case asked at least fourteen employees, not counting the plaintiffs in the case, if they would agree to take a polygraph test. Appellant's Exhibits # # 87–90. Although no polygraph tests were ever administered to these employees, nonetheless, the bank's actions violated the polygraph statute.

YETKA, Justice. I join in the partial dissent of Judge WAHL.

While I believe that the punitive damages are far in excess of what should be allowed, if punitive damages are allowed to Bucko and Jaskowiak, they are receivable by Crace as well.